**GIBSON, DUNN & CRUTCHER LLP**
Scott J. Greenberg (*pro hac vice* pending)
Matthew J. Williams (*pro hac vice* pending)
Keith R. Martorana (*pro hac vice* pending)
Robert E. Fitzgerald (*pro hac vice* pending)
Tommy Scheffer (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
sgreenberg@gibsondunn.com
mjwilliams@gibsondunn.com
kmartorana@gibsondunn.com
rfitzgerald@gibsondunn.com
tscheffer@gibsondunn.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Anthony De Leo, Esq.
Matteo Percontino, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
adeleo@coleschotz.com
mpercontino@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LIV GOLF NEW JERSEY LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-20189 (MBK)<br><br>(Joint Administration Requested) |

# DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application (the "Application"), and rely upon and

[1] The last four digits of Debtor LIV Golf New Jersey LLC's tax identification number are 5081. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/livgolf. The location of the Debtors' service address in these chapter 11 cases is: 50 Hudson Yards, Suite 65B, New York, NY 10001.

incorporate by reference the *Declaration of David Orlofsky, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed concurrently herewith:[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing the Debtors to appoint Omni Agent Solutions, Inc. ("Omni") as the claims and noticing agent (the "Claims and Noticing Agent") in the Debtors' chapter 11 cases effective as of the Petition Date (as defined herein) pursuant to the terms and conditions of that certain standard services agreement dated July 29, 2026, by and between the Debtors and Omni (the "Services Agreement"), attached as Exhibit 1 to the Order, and (b) granting related relief. In support of this Application, the Debtors submit the First Day Declaration, the *Declaration of David Orlofsky in Support of the Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* (the "Orlofsky Declaration") attached hereto as **Exhibit B**, and the *Declaration of Paul H. Deutch in Support of Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* (the "Deutch Declaration") attached hereto as **Exhibit C**.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6,

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

2025 (Bumb, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, 28 U.S.C. §§ 1-5001, section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Court's *General Order Governing Protocol for the Retention of Claims and Noticing Agents Under 28 U.S.C. § 156(c) Pending Adoption of Local Rule* (the "Claims and Noticing Agent Retention Protocol").

**Background**

5. The Debtors own and operate an international men's professional golf league (the "League"). Founded in 2021 and financially backed by The Public Investment Fund of the Kingdom of Saudi Arabia (the "PIF"), the Debtors host tournaments at golf courses around the world (the "Tournaments"). The Tournaments feature world-class entertainment as well as League-contracted professional golfers (the "Players") who compete in both individual and team competitions that take place alongside each other. The Debtors have built a recognizable global brand through attracting fans, broadcasters and commercial partners. Additional background, including the events leading to these chapter 11 cases is set forth in the First Day Declaration.

6. On September 8, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to

Bankruptcy Rule 1015(b). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

7. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these chapter 11 cases can be found in the First Day Declaration, which is incorporated herein by reference.

**<u>Omni's Qualifications</u>**

8. Omni is a leading chapter 11 administrator and is comprised of industry professionals with significant experience in the administrative aspects of large, complex chapter 11 cases. Omni's professionals have significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, and experience in matters of this size and complexity. Omni has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims-processing portions of chapter 11 cases to ensure the efficient, orderly, and fair treatment of creditors, equity security holders, and all parties in interest. Omni's professionals have acted as the official claims and noticing agent in many large bankruptcy cases in this district and others. *See, e.g.*, *In re Uniroyal Holding, Inc.*, No. 26-18668 (MBK) (Bankr. D.N.J. Aug. 8, 2026); *In re Skyline Tower Resort Vacation Condo. Assoc., Inc.*, No. 25-22156 (ABA) (Bankr. D.N.J. Nov. 21, 2025); *In re Baker and Taylor, LLC,* No. 26-12863 (CMG) (Bankr. D.N.J. Mar. 24, 2026); *In re Nat'l Realty Inv. Advisors, LLC*, No. 22-14539 (JKS) (Bankr. D.N.J. July 21, 2022); *In re Vi-Jon, LLC*, No. 26-11216 (MFW) (Bankr. D. Del. Aug. 5, 2026); *In re Republic Nat'l Distrib. Co., LLC*, No. 26-90737

(CML) (Bankr. S.D. Tex. July 27, 2026); *In re Brayman Precast, LLC*, No. 26-22052 (CMB) (Bankr. W.D. Pa. July 24, 2026); *In re Alea Holdings US Co.*, No. 26-90714 (CML) (Bankr. S.D. Tex. July 20, 2026); *In re Sea Oaks Condo. Council of Co-Owners*, No. 26-02882 (LJD) (Bankr. D.S.C. Aug. 18, 2026); *In re Warrior Techs., LLC*, No. 26-33562 (ARP) (Bankr. S.D. Tex. May 21, 2026); *In re Lena Brands LLC*, No. 26-10792 (TMH) (Bankr. D. Del. May 28, 2026); *In re CHS FL, LLC*, No. 26-01087 (LER) (Bankr. M.D. Fla. June 22, 2026); *In re Finch Therapeutics Grp., Inc.*, No. 26-10409 (LSS) (Bankr. D. Del. Mar. 26, 2026).[3]

9. Appointing Omni as the Claims and Noticing Agent in these chapter 11 cases will expedite and maximize the efficiency of the distribution of notices and the processing of claims, as well as relieve the Office of the Clerk of the Bankruptcy Court of the District of New Jersey (the "Clerk") of the administrative burden of processing an overwhelming number of claims.

10. As described in the Orlofsky Declaration and the First Day Declaration, prior to selecting Omni as their Claims and Noticing Agent, the Debtors solicited and reviewed engagement proposals from at least four (4) other Court-approved claims and noticing agents to ensure selection through a competitive process. The Debtors submit that Omni's rates are competitive and reasonable given Omni's quality of services and expertise. The terms of Omni's engagement are set forth in the Services Agreement.

**Services to be Provided**

11. This Application pertains only to the work to be performed by Omni under the Clerk's delegation of duties as permitted by 28 U.S.C. § 156(c) and the Claims and Noticing Agent Retention Protocol. Any work to be performed by Omni outside of this scope is not covered by this Application or by any order of the Court granting approval hereof. The Debtors, however,

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

reserve the right to seek authority to retain Omni to perform additional services pursuant to section 327 of the Bankruptcy Code.

12. Specifically, Omni will perform the following tasks in its role as the Claims and Noticing Agent in these chapter 11 cases, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"):

(a) Preparing and serving required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors or the Court, including, without limitation: (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (if any); (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan or plans, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b) Maintaining an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c) Maintaining a (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and updating said lists and making said lists available upon request by a party-in-interest or the Clerk;

(d) Furnishing a notice to all potential creditors of the deadline for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notifying such potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) Maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received;

(f) For all notices, motions, orders, or other pleadings or documents served, preparing and filing, or causing to be filed, with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons or entities to whom it was served (in alphabetical order) with their

mailing or email addresses as appropriate; (iii) the manner of service; and (iv) the date served;

(g) Processing all proofs of claim received, including those received by the Clerk, checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

(h) Providing an electronic interface for filing proofs of claim;

(i) Maintaining the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk on a case-specific website, and, upon the Clerk's request, providing the Clerk with certified, duplicate unofficial Claims Registers;

(j) Specifying in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(k) Providing public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(l) Implementing necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(m) Recording all transfers of claims and providing any notices of such transfers, as required by Bankruptcy Rule 3001(e);

(n) Relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of the Claims and Noticing Agent, not less than weekly;

(o) Upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(p) Monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and making necessary notations on or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(q) Identifying and correcting any incomplete or incorrect addresses in any mailing or service lists;

(r) Assisting in the dissemination of information to the public and responding to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website or call center;

(s) If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contacting the Clerk's office within three (3) days of the Claims and Noticing Agent receiving notice of entry of the order converting the cases;

(t) Thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, requesting that the Debtors submit to the Court a proposed order dismissing the

Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(u) Within seven (7) days of notice to the Claims and Noticing Agent of entry of an order closing these chapter 11 cases, providing to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

(v) At the close of these chapter 11 cases, boxing and transporting all original documents, in proper format, as provided by the Clerk, to (i) the Philadelphia Federal Records Center, located at 14700 Townsend Road, Philadelphia, PA 19154, or (ii) any other location requested by the Clerk.

13. The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Omni.

**Professional Compensation**

14. The Debtors propose to compensate Omni for the Claims and Noticing Services in accordance with the rate schedule attached to the Services Agreement (the "Rate Schedule"), subject to the DIP Order (as defined in the Order). The Debtors respectfully request that the undisputed fees and expenses incurred by the Claims and Noticing Agent in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business, subject to the DIP Order, without further application to or order of the Court.

15. Omni agrees to maintain records of all services, including dates, categories of services, fees charged, and expenses incurred. Omni further agrees to serve monthly invoices on (a) the Debtors, (b) the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee"), (c) counsel for the Debtors, (d) counsel to the DIP Lender, (e) counsel for any official committee appointed to monitor the expenses of the Debtors in these chapter 11 cases, and (f) any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises

relating to the Services Agreement or the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If a resolution is not achieved, the parties may seek resolution of the matter from the Court.

16. Prior to the Petition Date, the Debtors provided Omni a retainer in the amount of $75,000. Subject to the DIP Order, Omni seeks to first apply the retainer to all prepetition invoices and, thereafter, to hold the retainer during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

17. Additionally, under the terms of the Services Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Omni and its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Omni's gross negligence, willful misconduct, bad faith, self-dealing, or actual fraud or as otherwise provided in the Services Agreement or any order of this Court. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these chapter 11 cases.

**Disinterestedness**

18. Although the Debtors do not propose to employ Omni under section 327(a) of the Bankruptcy Code pursuant to this Application, Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and the Debtors have been advised that, to the best of Omni's knowledge, information, and belief, and except as disclosed in the Deutch Declaration, Omni has represented

that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

19. Moreover, in connection with its retention as Claims and Noticing Agent, Omni represents in the Deutch Declaration, among other things, that:

(a) Omni is not a creditor of the Debtors;

(b) Omni is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, with respect to the matters upon which it is to be engaged;

(c) Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(d) By accepting employment in these chapter 11 cases, Omni waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(e) In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(f) Omni will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(g) In its capacity as Claims and Noticing Agent in these chapter 11 cases, Omni will not intentionally misrepresent any fact to any person;

(h) Omni shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i) Omni will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) None of the services provided by Omni as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

20. Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## <u>Basis for Relief Requested</u>

### I. Retention and Employment of Omni as Claims and Noticing Agent Is Permitted.

21. Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Fed. R. Bankr. P. 2002. Under Bankruptcy Rule

2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below. Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases. 28 U.S.C. § 156(c). Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

22. Due to the size of these chapter 11 cases, the Debtors anticipate that many thousands of entities will need to be noticed. Accordingly, Bankruptcy Rule 2002 and section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

23. For the foregoing reasons, the Debtors believe that the retention of Omni as the Claims and Noticing Agent in these chapter 11 cases is necessary and in the best interests of the Debtors, their estates, creditors, and all parties in interest. Furthermore, the fees and expenses that would be incurred by Omni under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

24. By separate application, the Debtors intend to seek authorization to retain and employ Omni as the administrative agent in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of these chapter 11 cases will require Omni to

perform duties outside the scope of 28 U.S.C. § 156(c) and the Claims and Noticing Agent Retention Protocol.

**II. Relief Effective as of the Petition Date Is Appropriate.**

25. Pursuant to the Debtors' request, Omni has agreed to serve as the Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date, so that Omni may be compensated for its services prior to approval of this Application. Such relief is appropriate in light of 28 U.S.C. § 156(c) and the Claims and Noticing Agent Retention Protocol and in order to relieve the Court and the Clerk's office of the heavy administrative burdens these chapter 11 cases stand to impose. The Debtors believe that no party in interest will be prejudiced by granting the employment effective as of the Petition Date, as provided in this Application, because Omni has provided and continues to provide valuable services to the Debtors' estates in the interim period. In light of the number of anticipated claimants and the complexity of these chapter 11 cases, the Debtors submit that the appointment of a Claims and Noticing Agent is in the best interests of the Debtors' estates, their creditors, and all parties in interest.

**<u>Compliance with the Claims and Noticing Agent Retention Protocol</u>**

26. This Application complies with the Claims and Noticing Agent Retention Protocol, in that the Debtors have obtained and reviewed engagement proposals from at least two (2) other Court-approved claims and noticing agents to ensure selection through a competitive process. The Debtors and their counsel submit that Omni was selected as the claims and noticing agent after the review and competitive comparison of five (5) proposals. Moreover, the Debtors submit, based

on all engagement proposals obtained and reviewed, that Omni's rates are competitive and reasonable given Omni's quality of services and expertise.

**<u>The Requirements of Bankruptcy Rule 6003(a) Are Satisfied</u>**

27. Bankruptcy Rule 6003(a) empowers a court to grant relief within the first twenty-one (21) days after the Petition Date to the extent that "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). As set forth in this Application, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. The appointment of the Claims and Noticing Agent is vital to a smooth transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

**<u>Request for Waiver of Stay</u>**

28. To the extent that the relief sought in this Application constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Application is immediately necessary so that the Claims and Noticing Agent can immediately commence work on time-sensitive matters and promptly devote resources to these chapter 11 cases.

**<u>Reservation of Rights</u>**

29. Notwithstanding anything to the contrary herein, nothing contained in this Application or any actions taken pursuant to any order granting the relief requested by this Application is intended or should be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or

other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Application or any order granting the relief requested by this Application; (e) a request, approval, or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code (or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code); (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Application are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; or (i) a waiver of the obligation of any party in interest to file a proof of claim. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not

intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

30. No prior request for the relief sought in this Application has been made to this Court or any other court.

## Notice

31. The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to PIF as prepetition lender and DIP Lender; (d) the office of the attorney general for each of the states in which the Debtors operate; (e) the United States Attorney's Office for the District of New Jersey; (f) the Internal Revenue Service; (g) Omni; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: September 8, 2026

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Anthony De Leo, Esq.
Matteo Percontino, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
adeleo@coleschotz.com
mpercontino@coleschotz.com

- and -

**GIBSON, DUNN & CRUTCHER LLP**
Scott J. Greenberg (*pro hac vice* pending)
Matthew J. Williams (*pro hac vice* pending)
Keith R. Martorana (*pro hac vice* pending)
Robert E. Fitzgerald (*pro hac vice* pending)
Tommy Scheffer (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
sgreenberg@gibsondunn.com
mjwilliams@gibsondunn.com
kmartorana@gibsondunn.com
rfitzgerald@gibsondunn.com
tscheffer@gibsondunn.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

# **Exhibit A**

**Proposed Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| In re:<br><br>LIV GOLF NEW JERSEY LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-20189 (MBK)<br><br>(Joint Administration Requested) |

**ORDER (I) AUTHORIZING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twelve (12), is **ORDERED**.

[1] The last four digits of Debtor LIV Golf New Jersey LLC's tax identification number are 5081. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/livgolf. The location of the Debtors' service address in these chapter 11 cases is: 50 Hudson Yards, Suite 65B, New York, NY 10001.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**GIBSON, DUNN & CRUTCHER LLP**
Scott J. Greenberg (*pro hac vice* pending)
Matthew J. Williams (*pro hac vice* pending)
Keith R. Martorana (*pro hac vice* pending)
Robert E. Fitzgerald (*pro hac vice* pending)
Tommy Scheffer (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
sgreenberg@gibsondunn.com
mjwilliams@gibsondunn.com
kmartorana@gibsondunn.com
rfitzgerald@gibsondunn.com
tscheffer@gibsondunn.com

- and -

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Anthony De Leo, Esq.
Matteo Percontino, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
adeleo@coleschotz.com
mpercontino@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* (the "Application"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors to appoint Omni Agent Solutions, Inc. ("Omni") as claims and noticing agent in the Debtors' chapter 11 cases (the "Claims and Noticing Agent") pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, the Court's *General Order Governing Protocol for the Retention of Claims and Noticing Agents Under 28 U.S.C. § 156(c) Pending Adoption of Local Rule* (the "Claims and Noticing Agent Retention Protocol"), and the terms of the Services Agreement, effective as of the Petition Date, all as more fully set forth in the Application; and upon the First Day Declaration, the Orlofsky Declaration, and the Deutch Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Application.

requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT:**

1. The Application is **GRANTED** as set forth herein.

2. The terms of the Services Agreement are approved as provided herein subject to the terms of this Order.

3. Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

4. The Debtors are authorized pursuant to 28 U.S.C. § 156(c) to retain Omni as Claims and Noticing Agent, effective as of the Petition Date, pursuant to the terms of the Services Agreement, in the form attached hereto as **Exhibit 1**, as modified by this Order, and Omni is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application (collectively, the "Claims and Noticing Services").

5. Notwithstanding anything to the contrary in the Application, the Deutch Declaration, the Orlofsky Declaration, the Services Agreement, or this Order, any services Omni will provide relating to the Debtors' Schedules shall be limited to administrative and ministerial services. The Debtors shall remain responsible for the content and accuracy of their Schedules.

6. Omni shall serve as the custodian of Court records and shall be designated as the

authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk. The Clerk shall provide Omni with Electronic Case Filing ("ECF") credentials that allow the Claims and Noticing Agent to receive ECF notifications, file certificates, and/or affidavits of service. To the extent any government or nongovernment claimant files a proof of claim with the Court via CM/ECF or manually with the Clerk, as opposed to with Omni, such filings will be deemed timely if filed by the applicable bar date set by the Court.

7. Omni is authorized and directed to provide public access to every proof of claim unless otherwise ordered by the Court, to obtain a post office box or address for the receipt of proofs of claim, and to provide an electronic interface for filing proofs of claim.

8. Omni is authorized to take such other action to comply with all duties set forth in the Application.

9. Omni is authorized to provide noticing services in these chapter 11 cases to the U.S. Trustee.

10. The Debtors are authorized, subject to the DIP Order (as defined below), to compensate Omni, for the Claims and Noticing Services in accordance with the terms of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Omni and the rates charged therefor, and to reimburse Omni for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Omni to file fee applications or otherwise seek this Court's approval for the compensation

for services rendered and reimbursement of expenses incurred.

11. Omni shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on (a) the Debtors, (b) the U.S. Trustee, (c) counsel to the Debtors, (d) counsel to any official committees appointed in these chapter 11 cases, (e) counsel to the DIP Lender, and (f) any party-in-interest who specifically requests service of the monthly invoices.

12. Parties shall have ten (10) calendar days from receipt of the invoice to review such invoice and raise any objections, either formally through the filing of an objection with the Court or informally through a writing served on Omni, to the fees and expenses being requested by Omni. If an objection is interposed, the parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Services Agreement or Omni's monthly invoices; provided that the parties may seek resolution of the matter from the Court if such efforts prove unsuccessful. If no objection has been raised, the Debtors are authorized, subject to the DIP Order, to pay Omni the full amount of the requested fees and expenses upon expiration of the ten (10) calendar day review without further order of the Court. If an objection has been raised, the Debtors may not pay the objected to amount pending agreement of the parties or entry of an order of this Court authorizing payment. Notwithstanding anything to the contrary contained in the Services Agreement, no late charges shall accrue on any invoices.

13. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Omni under this Order shall be an administrative expense of the Debtors' estates. Omni may apply its retainer to all prepetition invoices, and, thereafter, Omni may hold the retainer under the

Services Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement. Notwithstanding anything to the contrary contained in the Application, the Deutch Declaration, the Orlofsky Declaration, the Services Agreement, or this Order, section II(g) of the Services Agreement concerning the replenishment of the retainer is null and void during the pendency of these chapter 11 cases.

14. The indemnification, contribution, and reimbursement provisions in the Services Agreement are approved, subject to the following modifications, applicable during the pendency of these chapter 11 cases:

a. Omni shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

b. Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify Omni, or provide contribution or reimbursement to Omni, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Omni's gross negligence, willful misconduct, bad faith, self-dealing, or actual fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Omni's contractual obligations under the Services Agreement, unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under subsection (i) or (ii), but determined by this Court,

after notice and a hearing, to be a claim or expense for which Omni should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement, as modified by this Order.

c. If, before the earlier of the entry of an order (a) confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) or (b) closing these chapter 11 cases, Omni believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Services Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, Omni must file an application therefor in this Court, and the Debtors may not pay any such amounts to Omni before the entry of an order by this Court approving the payment, and any such payment shall be subject to the DIP Order. This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Omni for indemnification, contribution, or reimbursement, and is not intended to limit the duration of the Debtors' obligation to indemnify Omni. All parties in interest shall retain the right to object to any demand by Omni for indemnification, contribution, or reimbursement.

15. Omni shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

16. In the event Omni is unable to provide the Claims and Noticing Services, Omni

shall immediately notify the Clerk and the Debtors' counsel and, upon approval of this Court, shall cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

17. Notwithstanding anything to the contrary contained in the Application, the Deutch Declaration, the Orlofsky Declaration, this Order, or the Services Agreement, Omni shall provide at least ten (10) business days' prior written notice of any increases in its billing rates, subject to the parties in interest's right to object to any such increases.

18. The Debtors may submit a separate retention application, pursuant to section 327(a) of the Bankruptcy Code or any applicable law, for work that is to be performed by Omni but is not specifically authorized by this Order.

19. Notwithstanding anything to the contrary contained in the Application, the Deutch Declaration, the Orlofsky Declaration, this Order, or the Services Agreement, section II(c) of the Services Agreement is null and void during the pendency of these chapter 11 cases.

20. Notwithstanding anything to the contrary contained in the Application, the Deutch Declaration, the Orlofsky Declaration, this Order, or the Services Agreement, including section II(a) of the Services Agreement, Omni shall provide at least ten (10) business days' notice of any amendments to its Rate Schedule by prospectively increasing its hourly rates, unit prices, and any other charges, fees, and costs therein subject to the parties in interest's right to object to any such amendments.

21. Notwithstanding anything to the contrary contained in the Application, the Deutch Declaration, the Orlofsky Declaration, this Order, or the Services Agreement, during the pendency

of these chapter 11 cases, if any advance payment is expected to exceed $7,500 as set forth in section II(d) of the Services Agreement, at the time Omni requests advance payment from the Debtors, Omni shall also provide notice to the U.S. Trustee, the DIP Lender, and any statutory committees appointed in these chapter 11 cases, and such request for advanced payment shall be subject to the DIP Order and the parties in interest's right to object.

22. Notwithstanding anything to the contrary in the Application, the Deutch Declaration, the Orlofsky Declaration, this Order, or the Services Agreement, the limitations of liability contained in section XI of the Services Agreement shall be of no force or effect during the pendency of these chapter 11 cases.

23. Notwithstanding anything to the contrary contained in the Application, the Deutch Declaration, the Orlofsky Declaration, this Order, or the Services Agreement, in the event that any of these chapter 11 cases convert to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to such case or cases shall have no obligation to continue the engagement of Omni.

24. Notwithstanding anything to the contrary contained in the Application, the Deutch Declaration, the Orlofsky Declaration, this Order, or the Services Agreement, including section VII of the Services Agreement, the Court is not authorizing Omni to establish financial accounts with financial institutions on behalf of the Debtors.

25. Omni shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of this Court, *provided, however,* that Omni may seek such relief on an expedited basis.

26. Nothing in this Order authorizes the Debtors to accelerate any payments not otherwise due.

27. In the event of any inconsistency between the Services Agreement, the Application, the Deutch Declaration, the Orlofsky Declaration, and this Order, the terms of this Order shall govern.

28. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

29. Notwithstanding anything to the contrary in the Application or this Order, any payment made by the Debtors pursuant to the authority granted in this Order must be in compliance with and any authorization of the Debtors contained herein is subject to: (a) any interim or final orders entered by the Court approving the Debtors' entry into any postpetition debtor-in-possession financing facility and/or authorizing the use of cash collateral; (b) the documentation in respect of any such debtor-in-possession financing or use of cash collateral; and (c) any budget or cash flow forecasts in connection therewith (in each case, the "DIP Order"). To the extent there is any inconsistency between the terms of the DIP Order and this Order, the terms of the DIP Order shall control.

30. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Order shall be effective and enforceable immediately upon entry hereof.

31. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of the Bankruptcy Rules and the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules") are satisfied by such notice.

32. The Debtors shall serve by regular mail a copy of this Order and the Application on all parties required to receive such service pursuant to Local Rule 9013-5(f) within forty-eight (48) hours after entry of this Order.

33. Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

34. Notwithstanding anything to the contrary in the Application, the Deutch Declaration, the Orlofsky Declaration, this Order, or any term in the Services Agreement, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Services Agreement**

7/29/26 (PHD)

# STANDARD SERVICES AGREEMENT

This Agreement is entered into as of July 29, 2026, between (I) Omni Agent Solutions, Inc ("**Omni**"), and (II) LIV Golf Investments Ltd, together with each of its affiliates and subsidiaries listed on **Schedule 1**, annexed hereto (collectively, the "**Companies**").[1] The parties agree as follows:

## Terms and Conditions

I. SERVICES

(a) Upon request by the Companies or as may be necessary for Omni to comply with applicable law, governmental regulation, court order or court rule, Omni shall provide the Companies with consulting and administrative services ("**Services**") in connection with the Companies' potential filing of chapter 11 petitions under the Bankruptcy Code (the "**Code**") and during any chapter 11 case(s) which the Companies may initiate. Without limitation, the Services may include any or all of the following: Assisting in the preparation of the Companies' bankruptcy schedules and statements of financial affairs ("**Schedules and SOFA**"), noticing, communication related services, claims management and reconciliation, plan solicitation, balloting and tabulation, contract review, securities, claims analysis, providing confidential online workspaces or data rooms (the publication of which shall not violate the confidentiality provisions of this Agreement), account management, disbursements, automation, and any other service which may be agreed upon by the parties.

(b) The Companies understand that to assist or enable Omni to provide the Services, Omni will engage in communications with various persons acting on the Companies' behalf (each, a "**Companies Party**").2 The Companies represent to Omni and agree that any and all requests, advice, information or direction which a Companies Party provides to or makes of Omni is expressly authorized by the Companies, that Omni may rely upon the accuracy and completeness of the information provided without any obligation to further verify it, and that the Companies shall be bound by any and all requests, advice, information or direction made.

(c) The Companies understand that Omni is not being retained to provide any legal or financial advice and that none of Omni's communications with a Companies Party or any other party constitutes legal or financial advice.

II. RATES

(a) The Companies agree to pay Omni for all fees, charges and costs for Services provided on their behalf in the amounts set forth in the schedule attached hereto as **Exhibit "A"** (the "**Rate Schedule**"). *In addition, Omni has agreed to provide the Companies with (i) a $25,000*

---

[1] Upon the filing of one or more chapter 11 petitions, the term "**Companies**" shall thereafter mean and include each of the filing parties, in their individual capacities as debtors and debtors in possession, together with any other entities whose chapter 11 cases are jointly administered with the filing parties' case(s). Each of the Companies shall be jointly and severally liable for all fees and costs incurred hereunder.

[2] Unless otherwise agreed upon, a Companies Party includes the Companies' managers, general partners, officers, directors, employees, agents, representatives, counsel, consultants and/or any other party with whom the Companies authorize to engage in a communication with Omni.

*credit on prepetition fees (contingent upon the voluntary commencement of at least one of the Companies' chapter 11 cases), and (ii) a twenty-five (25%) percent discount on Omni's standard hourly rates.*[3] Omni reserves the right to amend the Rate Schedule by increasing its hourly rates, unit prices, and any other charges, fees, and costs therein during the term of this Agreement and that upon so doing, the parties agree that the rates, prices, and other charges shall be effective immediately and constitute the operative Rate Schedule.

(b) Omni may invoice the Companies monthly for the Services it provided during the preceding calendar month consistent with the applicable Rate Schedule. All invoices are due and payable upon receipt. Notwithstanding anything herein to the contrary, in the event the Companies file one or more chapter 11 petitions, any payment made to Omni will be in accordance with applicable bankruptcy law and orders of the bankruptcy court.

(c) If any amount is unpaid to Omni thirty (30) days from the date of the Companies' receipt of an invoice, the Companies agree to pay a late charge calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute of any portion of an invoice, the Companies shall give written notice to Omni within ten (10) days of receipt of the invoice as to the charges disputed and the basis thereof. The undisputed portion of the invoice will remain due and payable immediately upon receipt, but late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. At its sole discretion, Omni may first apply any payment received against the cumulative sum of the late charges then due before it applies any remaining balance to the outstanding principal balance.

(d) Omni may require an advance or direct payment from the Companies of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e) The Companies shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Companies, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(f) The Companies shall pay to Omni all actual charges (including fees, costs and expenses as set forth in the then effective Rate Schedule) related to, arising out of, or resulting from, any error or omission made by the Companies including, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses.

(g) On or before August 7, 2026, the Companies shall pay Omni a retainer of $75,000 (the "**Retainer**"). Omni may use the Retainer against all reasonable and documented prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Companies to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice

[3] As set forth in the Rate Schedule.

from Omni to the Companies of the application of some or all of the Retainer, the Companies shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to the Companies any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(h) Payments to Omni for services rendered under the terms of this Agreement may be remitted using either or both of the following methods:

(i) **Wire Transmission**

(Omni's wire information will be included on each monthly invoice)

(ii) **Check**

Omni Agent Solutions
c/o Accounts Receivable
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367

III. RETENTION

(a) The Agreement is effective immediately upon its execution by the parties; provided, however, that it shall be subject to, if and when applicable, the terms of any order entered approving the engagement of Omni by the Companies in the Companies' chapter 11 proceeding(s).

(b) If the Companies commence one or more chapter 11 cases pursuant to the Code, then as soon as is practicable, but in no event more than thirty (30) days after such case or cases are commenced, the Companies agree to and shall take all necessary actions to obtain bankruptcy court approval to retain Omni as their claims and noticing agent pursuant to 28 U.S.C. § 156(c), and as its administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of any application concerning Omni's retention and any order setting forth its terms are subject to Omni's approval which shall not be unreasonably withheld. Notwithstanding any other provision of this Agreement, if the bankruptcy court does not enter an order approving Omni's retention pursuant to 28 U.S.C. § 156(c) or section 327 of the Code, this Agreement will be terminated effective immediately.

IV. TERM

(a) Except as provided herein, the Agreement will remain in effect until terminated: (a) on a mutually agreed upon date as set forth in a writing executed by both parties; (b) on a date of no less than sixty (60) days from the date written notice is provided by one party to the other; (c) by the Companies for cause ("**Cause**") which, for purposes of this Agreement, shall mean that Omni has acted in bad faith, with gross negligence, or engaged in willful misconduct that results in material harm to the Companies' effort and ability to restructure in their chapter 11 cases; or (d) by Omni upon the Companies' material breach of any term herein. If Omni's engagement has been already approved by the bankruptcy court, then Omni shall continue to perform the Services until the entry of an order by the bankruptcy court, in a form and substance satisfactory to Omni, whose consent will not be unreasonably withheld, providing for the terms and conditions of its discharge,

including date of termination.

(b) Upon its termination, Omni shall provide the Companies with all materials Omni is required to return to the Companies under the terms of this Agreement as well as all in-process deliverables in their then-current state of completion for Services which Omni provided prior to the effective date of the termination promptly after it has received payment in full of all sums attributable to such Services, including for any Services which have then not yet been invoiced. Omni shall coordinate with the Companies and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, shall provide the necessary staff and assistance required for an orderly transfer, and the Companies agree to pay all sums which may become due in connection therewith. Without limiting the foregoing, upon the Companies' written request made at any time during the term of this Agreement, Omni shall deliver to the Companies and/or the Companies' retained professionals at the Companies' sole expense any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Companies.

V. CONFIDENTIALITY

(a) Omni and the Companies, on behalf of themselves and on behalf of each Companies Party, agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement ("**Confidential Information**"), except if any of such information: (a) is then or thereafter becomes publicly available, other than by breach by the receiving party; (b) is already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; (c) was independently developed; (d) is lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; or (e) is subject to production or revelation pursuant to an order of any court, governmental agency or other regulatory body, arbitrator or subpoena, it may, upon not less than ten (10) calendar days written notice to the other party, release the required information.

VI. OMNI'S PROPERTY RIGHTS

(a) The parties understand and agree that any and all software programs or other materials furnished by Omni pursuant to this Agreement or used by Omni to provide the Services during the term of this Agreement ("**Omni's Property**") are Omni's sole and exclusive property. Without limiting the foregoing, Omni's Property includes data processing programs, specifications, applications, routines, documentation, ideas, concepts, know-how or techniques relating to data processing or Omni's performance of Services. Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy cases.

(b) The Companies acknowledge and agree that regardless of any sums it has been charged or has paid to Omni, it obtains no rights or ownership whatsoever in any of Omni's

Property and that their use by the Companies is limited to enabling Omni to provide the Services hereunder.

VII. BANK ACCOUNTS

(a) At the request of the Companies, Omni is authorized to establish account(s) with financial institutions in the name of and/or as agent for the Companies and to manage such account(s), including to facilitate distributions pursuant to a chapter 11 plan or otherwise.

VIII. COMPANIES' DATA

(a) Without limiting any other provision of this Agreement, the Companies represent and warrant to Omni that when a Companies Party provides information to Omni (a) the Companies have all necessary authority to disclose it to Omni and that Omni is fully authorized to use it in connection with its performance of the Services; (b) that the information is materially accurate and complete to the best of the Companies' knowledge at the time of such communication(s); and (c) that Omni has no responsibility whatsoever to verify or otherwise independently confirm the accuracy or completeness of any information, programs, data or instructions it is provided including, without limitation, data it receives in connection with the preparation of the Companies' Schedules and SOFAs. The Companies agree that they shall be deemed to have reviewed and approved any and all Schedules and SOFAs which are filed on their behalf.

(b) Without limiting any other provision of this Agreement, the Companies understand and agree that all data, storage media, programs or other materials which are furnished to Omni on its behalf (the "**Companies' Data**") may be retained by Omni until full payment has been made to Omni for all of its Services and that they shall remain liable to Omni for all fees and expenses thereafter charged by Omni for maintaining, storing or disposing of any or all of it. Omni agrees that it will dispose of the Companies' Data in a manner requested by or acceptable to the Companies; provided, however, that if Omni has not provided Services to the Companies for a period of ninety (90) days and provides no less than thirty (30) days written notice, Omni may dispose of any or all of the Companies' Data in any commercially reasonable manner at the Companies' sole expense. The Companies agree to use commercially reasonable efforts to initiate and maintain backup files that would allow the Companies to regenerate or duplicate all programs, data or information which is provided on their behalf to Omni.

(c) If Omni is retained pursuant to bankruptcy court order, disposal of any of the Companies' Data shall comply with any applicable court orders and rules or clerk's office instructions.

IX. NO REPRESENTATIONS OR WARRANTIES

(a) Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting its enforceability to the maximum extent compatible with applicable law.

X. INDEMNIFICATION

(a) To the fullest extent permitted by applicable law, the Companies shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Omni and the Companies shall provide notice to the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c) The Companies' indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d) The Companies' indemnification obligations hereunder shall survive the termination of this Agreement.

XI. LIMITATIONS OF LIABILITY

(a) Except as expressly provided herein, Omni's liability to the Companies for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Companies for the portion of the particular specific task or expense of the Service that gave rise to the alleged Loss. In no event shall Omni's liability to the Companies for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII. GENERAL

(a) Each party acknowledges that authorized person(s) on its behalf has read this Agreement, understands it, and agrees to be bound by its terms. Each party further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by a Companies Party, on behalf of the Companies, and an officer of Omni.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e) This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f) Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g) The Companies will use their best efforts to cooperate with Omni at the Companies' facilities if any portion of the Services require Omni's physical presence.

(h) Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i) The Companies and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j) The language used in this Agreement will be deemed to be the language chosen by the Companies and Omni to express their mutual intent, and no rule of strict construction will be applied against either party.

(k) In the event that any arbitration or legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree that the prevailing party is entitled to be paid all of its reasonable attorneys' fees, court costs, and any other expense reasonably related thereto in the amount which may be set by the court or by an arbitrator, whether in the same action or in a separate action brought for the purpose of establishing such amount, in addition to any other relief to which the prevailing party may be entitled.

(l) The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(m) Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Companies, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(n) Omni reserves the right to make changes in operating procedures, operating systems, programming languages, general purpose library programs, application programs, time periods of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy case(s).

(o) All headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

## XIII. NOTICING

(a) All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:
Omni Agent Solutions, Inc.
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367
Tel: (818) 906-8300
Attn: Brian K. Osborne, Pres. & CEO
Email: Bosborne@omniagnt.com

If to the Companies:
LIV Golf Investments Ltd, *et al.*
50 Hudson Yards, Suite 65B
New York, NY 10001
Attn: John Ruzich, Chief Legal Officer
Email: john.ruzich@livgolf.com

With a copy to:
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Attn: Keith R. Martorana, Esq.

kmartorana@gibsondunn.com
Matthew J. Williams, Esq.
mjwilliams@gibsondunn.com

Or to such other address as the Party to receive the notice or request so designates by written notice to the other.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: ________________________________
Name: Paul Deutch
Title: Executive Vice President

Agreed and accepted this 31st day of July, 2026

**LIV GOLF INVESTMENTS LTD, ET AL.**

________________________________
John Ruzich
Chief Legal Officer

7/29/26 (PHD)

# SCHEDULE 1

## List of Affiliates and Subsidiaries

7/29/26 (PHD)

1. **LIV Golf Investments Ltd**
2. **LIV Golf Holdings Ltd**
3. **Fairway TM Blocker 1, LLC**
4. **Fairway TM Co 1, LLC**
5. **Fairway TM Blocker 2, LLC**
6. **Fairway TM Co 2, LLC**
7. **Fairway TM Blocker 3, LLC**
8. **Fairway TM Co 3, LLC**
9. **Fairway TM Blocker 4, LLC**
10. **Fairway TM Co 4, LLC**
11. **Fairway TM Blocker 5, LLC**
12. **Fairway TM Co 5, LLC**
13. **Fairway TM Blocker 6, LLC**
14. **Fairway TM Co 6, LLC**
15. **Fairway TM Blocker 7, LLC**
16. **Fairway TM Co 7, LLC**
17. **Fairway TM Blocker 8, LLC**
18. **Fairway TM Co 8, LP**
19. **Fairway TM Blocker 8 GP, LLC**
20. **Fairway TM Blocker 9, LLC**
21. **Fairway TM Co 9, LLC**
22. **Fairway TM Blocker 10, LLC**
23. **Fairway TM Co 10, LLC**
24. **Fairway TM Blocker 11, LLC**
25. **Fairway TM Co 11, LLC**
26. **Fairway TM Blocker 12, LLC**
27. **Fairway TM Co 12, LP**
28. **Fairway TM Co 12 GP, LLC**
29. **Fairway TM Blocker 13, LLC**
30. **Fairway TM Co 13, LLC**
31. **LIV Golf Incorporated**
32. **Fairway TM Intermediate 1, LLC**
33. **Fairway TM Intermediate 2, LLC**
34. **Fairway TM Intermediate 3, LLC**
35. **Fairway TM Intermediate 4, LLC**
36. **Fairway TM Intermediate 5, LLC**
37. **Fairway TM Intermediate 6, LLC**
38. **Fairway TM Intermediate 7, LLC**
39. **Fairway TM Intermediate 8, LLC**
40. **Fairway TM Intermediate 9, LLC**
41. **Fairway TM Intermediate 10, LLC**
42. **Fairway TM Intermediate 11, LLC**
43. **Fairway TM Intermediate 12, LLC**
44. **Fairway TM Intermediate 13, LLC**
45. **LIV Golf Bedminster, LLC**
46. **LIV Golf US Media, LLC**

**47. Wedge Event 1 Co**
**48. Wedge Event 2 Co**
**49. Wedge Event 3 Co**
**50. Wedge Event 4 Co**
**51. Wedge WPB Inc.**
**52. Wedge Event 7 Co**
**53. Wedge IP Management Co, Limited**
**54. Wedge IP Management Co, LLC**
**55. LIV Golf Ltd**
**56. LIV Golf Events (ISE) Ltd**
**57. LIV Golf Events Limited**

# EXHIBIT A

## Rate Schedule

# 2026 Rate Sheet (Hourly Rates Discounted 25%)

Omni AGENT SOLUTIONS

**Analyst** — Waived

Analysts perform tasks such as incoming and outgoing mail processing (including returned mail), creditor correspondence, document and file organization, docket updates.

**Consultant** — $60-$160

Consultants perform and manage various day-to-day activities to meet the specific needs of each client's case. These services include data collection, preparation of the creditor matrix, compilation of the noticing database, preparation of Schedules and SOFA's, processing and review of claims and ballots, maintenance of the official claims register and the processing of claim transfers, managing and maintaining the case website, and document management. In addition, Consultants perform quality assurance checks on all services, oversee noticing and fulfillment, assist with creditor communications, and produce multiple reports on claims, ballots, and other requested data. Omni's consultant's each average over five years industry-related experience.

**Senior Consultants** — $168.75 - $221.25

Senior Consultants are the main points of contact for Omni's clients, their counsel, and other related professionals. Senior Consultants oversee all aspects of case administration, providing industry expertise and strategic administrative support on complex issues Their responsibilities also include the internal management of Omni's case professionals. Omni's senior consultant's each average over ten years industry-related experience and many are former restructuring or financial industry professionals. If necessary, Omni's executive team will provide additional support in the senior consultant role at the rate range set forth above.

**Solicitation and Securities Consultant** — $168.75 - $221.25

Solicitation and Securities Consultants assist with the review, tabulation, and auditing of ballots, as well as executing plan solicitations and public securities-related services. In addition, Solicitation and Securities Consultants are available to prepare custom voting and tabulation reports, , as well as reports relating to other corporate securities events including exchange offers and rights subscriptions. The Solicitation and Securities Consultant will also interface with the banks, brokers, nominees, depositories, securities holders and their agents regarding solicitation and corporate events. Solicitation and Securities consultant's average over five years of related experience.

**Director of Solicitation and Securities** — $243.75

The Director of Solicitation and Securities is the lead consultant in the plan solicitation process and any corporate action-related events. The Director oversees and coordinates all aspects of plan voting and solicitation, including tabulation verification, and, if and when necessary, will attest to the solicitation process and results. The Director also oversees and advises on public securities notices and related actions including voting, exchange offers, treatment elections, rights subscriptions, distributions, and notices, and will coordinate with the banks, brokers, nominees, depositories, securities holders and their agents to ensure smooth and successful execution of the related processes. Omni's Director of Solicitation and Securities is a former Wall Street executive with over 15 years of relevant securities and finance experience.

**Treasury Services – Including Banking, Escrow Agent and Distribution Services** — $75 - $221.25

Treasury Service Consultants provide banking, escrow agent and distribution services. Omni's banking services include opening, maintaining and closing bank accounts, ACH Payments, balance transfers, monthly statement reconciliation, positive pay management, general administrative management and more. Escrow Agent services include full-service banking, administration and management required to execute various types (Asset Sale, Litigation Settlement, Professional Fees) of financial transactions. Omni's Distribution services include the creation and management of the distribution data, banking services, distribution fulfillment via hard check, wire transfer, ACH or other means, bank statement reconciliations, distribution reporting, coordinate tax reporting, final report and account closing. Omni's Treasury Consultants average 15 years of accounting, banking or financial services experience.

**Technology Consultant** — $50 - $75

Technology Consultants provide technical and database support with respect to the onboarding and processing of complex data. Our Consultants also deliver ongoing and customized reporting requirements, assist with variable data mailings and exhibit preparation and provide custom solutions to meet individual case requirements. Omni's Technology Consultants each average at least 15 years experience in the information technology and development industry.

# 2026 Rate Sheet (Hourly Rate Discounted 25%)

Omni AGENT SOLUTIONS

| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Office Services | Waived |
| Case Administration Services | $75 - $221.25 per hour |
| Claims Management | $75 - $221.25 per hour |
| Noticing Services | $75 - $221.25 per hour |
| Schedules and SOFA Services | $75 - $221.25 per hour |
| Solicitation Services | $75 - $243.75 per hour |
| Disbursement/Treasury Services | $75 - $221.25 per hour |
| Communications Services – Call Center | $56.25 - $131.25 per hour |
| Quality Control/Oversight Management | $112.50 - $221.25 per hour |
| Executive Management | Waived |
| Programming and IT Customization | $50 - $75 per hour |

| Claims Management | RATE / COST |
|---|---|
| Inputting Proofs of Claim | Hourly rates<br>(No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $75.00 - $221.25 per hour |

| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | Standard hourly rates apply |
| Programming and Customization | $50 - $75 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

# 2026 Rate Sheet (Hourly Rates Discounted 25%)

Omni AGENT SOLUTIONS

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| MSL E-mail noticing | No charge |
| High Volume or Certified E-mail Noticing | TBD per volume |
| Facsímile Noticing | $.10 per image |
| Postage/Overnight Service | Prevailing rates as required (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $50.00 per Month |
| Usage | $.10 per Minute |
| Call center personnel | Standard Hourly Rates |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Electronic Services, Storage & Security | RATE / COST |
|---|---|
| License Fee and System Maintenance | .10 per Record |
| Per image storage | No charge |
| Monthly Encryption Bandwidth and Security Compliance Charges** | .20 per MB |
| Automated Services | .20 - .49 per process |

| Virtual Data Rooms | Quote upon request |
|---|---|

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $50.00 per copy |

** Charges relate to secure, bidirectional encryption of web-based documents and telephony, as well as secure storage of case records, documents and related files based on volume

# **<u>Exhibit B</u>**

## **Orlofsky Declaration**

**GIBSON, DUNN & CRUTCHER LLP**
Scott J. Greenberg (*pro hac vice* pending)
Matthew J. Williams (*pro hac vice* pending)
Keith R. Martorana (*pro hac vice* pending)
Robert E. Fitzgerald (*pro hac vice* pending)
Tommy Scheffer (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
sgreenberg@gibsondunn.com
mjwilliams@gibsondunn.com
kmartorana@gibsondunn.com
rfitzgerald@gibsondunn.com
tscheffer@gibsondunn.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Anthony De Leo, Esq.
Matteo Percontino, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
adeleo@coleschotz.com
mpercontino@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LIV GOLF NEW JERSEY LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-20189 (MBK)<br><br>(Joint Administration Requested) |

# DECLARATION OF DAVID ORLOFSKY IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF

I, David Orlofsky, under penalty of perjury, declare as follows:

1. I am the Chief Restructuring Officer of LIV Golf New Jersey LLC (together with its affiliated debtors and debtors in possession, the "Debtors"). I am authorized to submit this

[1] The last four digits of Debtor LIV Golf New Jersey LLC's tax identification number are 5081. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/livgolf. The location of the Debtors' service address in these chapter 11 cases is: 50 Hudson Yards, Suite 65B, New York, NY 10001.

declaration (this "Declaration") in support of the *Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* filed contemporaneously herewith (the "Application"). Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by members of the Debtors' senior management and advisors.

2. The Debtors obtained and reviewed engagement proposals from at least two (2) other Court-approved claims and noticing agents to ensure selection through a competitive process. Omni Agent Solutions, Inc. ("Omni") was selected as the Claims and Noticing Agent after the review and competitive comparison of five (5) proposals. Moreover, the Debtors believe, based on all engagement proposals obtained and reviewed, that Omni's rates are competitive and reasonable given Omni's quality of services and expertise.

3. Based on the foregoing, I am of the opinion that it is necessary for the Debtors to employ Omni as the Claims and Noticing Agent in these chapter 11 cases and that such employment is in the best interests of the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Respectfully submitted,

Dated: September 8, 2026

/s/ *David Orlofsky*
David Orlofsky
Chief Restructuring Officer
LIV Golf New Jersey LLC

**<u>Exhibit C</u>**

**Deutch Declaration**

**GIBSON, DUNN & CRUTCHER LLP**
Scott J. Greenberg (*pro hac vice* pending)
Matthew J. Williams (*pro hac vice* pending)
Keith R. Martorana (*pro hac vice* pending)
Robert E. Fitzgerald (*pro hac vice* pending)
Tommy Scheffer (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
sgreenberg@gibsondunn.com
mjwilliams@gibsondunn.com
kmartorana@gibsondunn.com
rfitzgerald@gibsondunn.com
tscheffer@gibsondunn.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (*pro hac vice* pending)
Anthony De Leo, Esq.
Matteo Percontino, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
adeleo@coleschotz.com
mpercontino@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LIV GOLF NEW JERSEY LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-20189 (MBK)<br><br>(Joint Administration Requested) |

**DECLARATION OF PAUL H. DEUTCH**
**IN SUPPORT OF THE DEBTORS' APPLICATION**
**FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO**
**APPOINT OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT**
**EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

I, Paul H. Deutch, being duly sworn, state the following under penalty of perjury:

1. I am the Executive Vice President of Omni Agent Solutions, Inc. ("Omni"), whose offices are located at 1120 Avenue of the Americas, 4th Floor, New York, NY 10036. I am

[1] The last four digits of Debtor LIV Golf New Jersey LLC's tax identification number are 5081. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/livgolf. The location of the Debtors' service address in these chapter 11 cases is: 50 Hudson Yards, Suite 65B, New York, NY 10001.

authorized to make and submit this declaration on behalf of Omni (the "Declaration"). The statements contained herein are based upon my personal knowledge and if called and sworn as a witness, I could and would testify competently thereto. Omni submits this Declaration in support of the *Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* (the "Application")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for entry of an order authorizing the employment and retention of Omni as the Debtors' claims and noticing agent in the above-captioned chapter 11 cases effective as of September 8, 2026 (the "Petition Date") pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and to approve the Standard Services Agreement, dated as of June 29, 2026 (the "Services Agreement"). The Services Agreement is attached to the Proposed Order as **Exhibit 1**.

2. Omni is comprised of leading industry professionals with significant experience in the administrative aspects of large, complex chapter 11 cases. Omni has substantial experience in noticing, claims administration, and the other administrative aspects of chapter 11 cases, including cases of comparable size and complexity. Omni has served as claims and noticing agent and/or administrative agent in many bankruptcy cases in this district and others. *See, e.g., In re Baker & Taylor, LLC*, No. 26-12863 (CMG) (Bankr. D.N.J. Mar. 24, 2026) (authorizing employment and retention of Omni as debtor's claims and noticing agent); *In re Skyline Tower Resort Vacation Condo. Assoc. Inc.*, No. 25-22156 (ABA) (Bankr. D.N.J. Nov. 21, 2025) (same); *In re Nat'l Realty Invs. Advisors, LLC,* No. 22-14539 (JKS) (Bankr. D.N.J. July 21, 2022) (same); In *re Claire's*

[2] Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Application.

*Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Aug. 7, 2025) (same); *In re Zen JV, LLC*, No. 25-11195 (JKS) (Bankr. D. Del. June 27, 2025) (same).[3]

3. As administrative agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Omni will perform at the request of the Clerk's office the noticing and claims-related services specified in the Application and Services Agreement. In addition, at the Debtors' request, Omni will perform such other noticing, claims, technical, administrative, and support services as specified in the Application, subject to 28 U.S.C. § 156(c).

4. Prior to filing these chapter 11 cases, the Debtors paid Omni a retainer of $75,000. Omni seeks to first apply the retainer to all prepetition invoices, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer during the chapter 11 cases as security for the payment of fees and expenses under the Services Agreement. Following termination of the Services Agreement, Omni will return to the Debtors any amount of the retain that remains.

5. Omni will follow procedures that conform to applicable guidelines promulgated by the Clerk and the Judicial Conference, and as may be entered by this Court's order.

6. Omni represents the following:

(a) Omni, its members, and its employees are not and were not, within two years before the date of the filing of these chapter 11 cases, creditors, equity security holders, insiders, or employees of the Debtors;

(b) Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c) by accepting employment in these chapter 11 cases, Omni waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

(d) in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(e) Omni will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f) Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, with respect to the matters upon which it is engaged;

(g) in its capacity as Claims and Noticing Agent in these chapter 11 cases, Omni will not intentionally misrepresent any fact to any person;

(h) Omni shall be under the supervision and control of the Office of the Clerk of the Bankruptcy Court (the "Clerk") with respect to the receipt and recordation of claims and claim transfers;

(i) Omni will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) none of the Services provided by Omni as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

7. On March 16, 2026, certain funds and accounts managed by affiliates of Fortress Investment Group, LLC ("FIG") made a majority equity investment in Omni. FIG is a leading, highly diversified asset manager headquartered in New York and Dallas that invests across private equity, credit, real estate, and permanent capital strategies for institutional and private clients. FIG, through its investments, owns a majority of Ursa Acquisition Sub, LLC, which in turn wholly owns MMR Advisory Holdings, LLC, which in turn wholly owns Omni. Omni is independently operated by its management team and controlled by its board of directors (the "Board"). The Board has one member who is a representative of FIG.

8. I caused to be submitted for review by Omni's conflicts system the list of names of all known potential parties-in-interest in these chapter 11 cases (the "Potential Parties in Interest List"), annexed hereto as **Schedule 1.** The list of Potential Parties in Interest was provided by the

Debtors and includes, among other parties, the Debtors, significant equity holders, the Debtors' current and former directors and officers, secured creditors, the top 30 largest unsecured creditors, vendors, and the bankruptcy judges sitting in this jurisdiction. In addition, Omni compared the Potential Parties in Interest List to an internal database that includes, among other entities, Omni's parent entities, as well as a list of FIG's active fund investments (in the form most recently provided to Omni by FIG's internal compliance department).

9. At this time, and as set forth in further detail herein, Omni is not aware of any connections that would present a disqualifying conflict of interest. Should Omni discover any new relevant facts or connections bearing on the matters described herein during the period of retention, Omni will use reasonable efforts to promptly file a supplemental declaration.

10. To the best of my knowledge and based solely upon information provided to me by the Debtors and the above-referenced search, and except as provided herein, neither Omni nor FIG have any connections to any entities or individuals listed on the Potential Parties in Interest List. Omni has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, in matters unrelated to these chapter 11 cases, Omni and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases. Omni may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors. To the best of my knowledge, such relationships are materially unrelated to these chapter 11 cases.

11. To the best of my knowledge, none of Omni's professionals are related to bankruptcy judges in the District of New Jersey or any attorney known by Omni to be employed in the Office of the United States Trustee serving the District of New Jersey.

12. To the best of my knowledge, none of Omni's professionals were partners of, or formerly employed within the last three years by, firms that are Potential Parties in Interest or that have filed a notice of appearance in these Chapter 11 Cases. The firms of Gibson, Dunn and Crutcher LLP ("Gibson Dunn") and Cole Schotz LLP ("Cole Schotz") are included on the Interested Party List. Upon information and belief, within the last three years Omni has not served as claims and noticing agent and/or administrative agent on behalf of debtors who have also retained Gibson Dunn and Cole Schotz.

13. In addition to the above-referenced search procedures, Omni and FIG have the following restrictions in place in order to preserve Omni's disinterestedness: (i) no FIG personnel work on Omni client matters or have access to Omni client information, client files or client personnel; (ii) no FIG personnel work in Omni's offices; (iii) Omni operates independently from FIG, including that it does not share any employees, officers or other management with FIG, has separate offices in separate buildings, and has separate IT systems; and (iv) no Omni officer or employee is a director, officer or employee of FIG.

14. Omni, FIG and their affiliates, along with their respective personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms may appear in chapter 11 cases representing the Debtors or parties in interest. To the best of my knowledge, Omni does not currently utilize the services of any law firms, investment banking and advisory firms, accounting

firms, or financial advisors who have been identified on the Potential Parties in Interest List or who have filed a notice of appearance in these Chapter 11 cases.

15. Omni is not a party to any agreement where it receives consideration in exchange for transferring information derived from Omni's role as an administrative agent in cases in this district or elsewhere to nonclient third parties. Omni does not have any contract or agreement with any party under which Omni would receive consideration in exchange for providing claims data.

16. Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Omni and its personnel: (a) are not creditors, equity security holders, or insiders of the Debtors; (b) are not and were not, within two years before the date of filing of these chapter 11 cases, a director, officer, or employee of the Debtor; and (c) do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Respectfully submitted,

Dated: September 8, 2026

/s/ *Paul H. Deutch*
Paul H. Deutch
Executive Vice President
Omni Agent Solutions, Inc.

*Proposed Claims and Noticing Agent of the Debtors and Debtors in Possession*

**Schedule 1**

**Potential Parties in Interest List**

**Debtors**

Fairway TM Blocker 1, LLC
Fairway TM Blocker 10, LLC
Fairway TM Blocker 11, LLC
Fairway TM Blocker 12, LLC
Fairway TM Blocker 13, LLC
Fairway TM Blocker 2, LLC
Fairway TM Blocker 3, LLC
Fairway TM Blocker 4, LLC
Fairway TM Blocker 5, LLC
Fairway TM Blocker 6, LLC
Fairway TM Blocker 7, LLC
Fairway TM Blocker 8, LLC
Fairway TM Blocker 9, LLC
Fairway TM Co 11, LLC
Fairway TM Co 12 GP, LLC
Fairway TM Co 4, LLC
Fairway TM Co 8 GP, LLC
Fairway TM Co 8, LP
Fairway TM Intermediate 1, LLC
Fairway TM Intermediate 10, LLC
Fairway TM Intermediate 11, LLC
Fairway TM Intermediate 12, LLC
Fairway TM Intermediate 13, LLC
Fairway TM Intermediate 2, LLC
Fairway TM Intermediate 3, LLC
Fairway TM Intermediate 4, LLC
Fairway TM Intermediate 5, LLC
Fairway TM Intermediate 6, LLC
Fairway TM Intermediate 7, LLC
Fairway TM Intermediate 8, LLC
Fairway TM Intermediate 9, LLC
LIV Golf Events (ISE) Ltd
LIV Golf Events Limited
LIV Golf Holdings Ltd
LIV Golf Incorporated

LIV Golf Investments Ltd
LIV Golf Ltd
LIV Golf New Jersey LLC
LIV Golf US Media, LLC
Wedge Event 2 Co
Wedge Event 3 Co
Wedge Event 4 Co
Wedge Event 7 Co
Wedge Event I Co
Wedge IP Management Co, Limited
Wedge IP Management Co, LLC
Wedge WPB Inc.

**Non-Debtor Affiliates**

LIV Golf Events Ltd (Australia)
LIV Golf Events Ltd (Hong Kong)
LIV Golf Events Ltd (Singapore)
LIV Golf Events Ltd (South Africa)
LIV Golf Events Ltd (South Korea)
LIV Golf Events Ltd (Spain)
Maples Secretaries (Cayman) Limited
Peninsula 5
Peninsula Limited
Sanabil Private Equity Investments Company
Saudi Arabian Investment Company

**Shareholders (Largest and All >=5%)**

Henrik Stenson
Ian Poulter
Oliver Banks
Public Investment Fund

**Current Directors and Officers**

Eugene Davis
Jon Zinman
Michael Newton
Philip Le Cornu
Scott McClure

**Former Directors and Officers**

Adam Harter
Anabella Whaite
Andrew Nicolas Liveris
Atul Khosla
Brian Patrick Gillespie
Brooks Koepka
Bryan Freedman
Chad Biggs
David Phillipps
Denise Taylor
Frank Marzano
Gary Davidson
Greg Norman
H.E. Yasir O. Al Rumayyan
Ilana Finley
Jacobo Solis
Jake Jones
Jed Moore
Jens Beck
John Ruzich
Jonathan Olson
Katie O'Reilly
Lawrence Burian
Lizzy Roberti
Louise Victoria Savage
Majed Mohamed Al Sorour
Martin Kaymer; mk sports GmbH & Co.KG
Michael Drobnick
Mohannad Alblehed
Noah Alireza
Omer Ken
Ron Skotarczak
Ross Hallett
Scarlett Aguasvivas
Scott O'Neil
Tim Taylor
Tomas Alonso
Ugwechi Amadi
Victoria Hawksley

Zedra Directors (Jersey) Limited
Bryson DeChambeau
Cameron Smith; Golf Dude Enterprises, LLC
Carlos Rodriguez Claudio
Chris Rosaasen
David Fox
Dustin Johnson; Dustin Johnson Enterprises, Inc.
Gerry L. Watson
Irek Myskow
James Dunkley
Jason McDonald
Joaquin Niemann
Joe Lum
Jon Rahm; Rahm, LLC
Jonas Martensson
Joseph McClean
Joseph Tuite
Larry Glick
Lee Westwood; Lee Westwood International Limited
Louis Oosthuizen
Phil Mickelson
Randall Wells
Scott Waldman
Sergio Garcia
Zedra Corporate

**Debtors' Bankruptcy Professionals (Retained)**

AlixPartners LLP
C Street Advisory Group
Cole Schotz P.C.
Ducera Partners LLC
Gibson, Dunn & Crutcher LLP
Kobre & Kim LLP
KPMG LLP
Omni

**Bankruptcy Judges and Staff**

Angela Pattison
Anthony Sodono
Aron Kaplan

Brendan Aldrich
Chief Judge Christine M. Gravelle
Christy McDonald
Cynthia Remy
Dana Muccie
Emily Betts
Gina Price
Grace Labruno
Heather Renye
Holly Nizolek
Ibn-Abdul Davis
Jenna Marshiano
Juan Filgueiras
Judge Andrew B. Altenburg, Jr.
Judge Eamonn J. O'Hagan
Judge Jerrold N. Poslusny, Jr.
Judge John K. Sherwood
Judge Mark E. Hall
Judge Michael B. Kaplan
Judge Stacey L. Meisel
Judge Vincent F. Papalia
Julia DeFabio
Kathleen Ryan
Katin Perez
Kevin Holden
Krista Shaheen
Linda Brakel
Luke Lentini
Maria DeOliveira
Maria Figueria
Michael Brown
Michael Tedesco
Michelle Fogleman
Nicole Leonard
Ntorian Pappas
Ohanna Fernandes
Rachel Stillwell
Rebecca A. Earl
S. Devendra Amin
Suzanne Sweeney

Travis Graga
Wendy Quiles
Zelda Haywood

**U.S. Trustee Office Personnel**

Adela Alfaro
Angeliza Ortiz-Ng
Daniel C. Kropiewnicki
David Gerardi
Fran B. Steele
Francyne D. Arendas
Ivy Cones
James Stives
Jeffrey Sponder
Kirsten K. Ardelean
Lauren Bielskie
Michael Artis
Michael Mitchell
Rachel Wolf
Tia Green
Tina L. Oppelt
William J. Ziemer

**Ordinary Course Professionals (Debtors' non-retained)**

Ashok Kedia & Company
BC4
CLEARY GOTTLIEB STEEN & HAMILTON LLP
Design Create Solutions Limited
Ernst & Young LLP
HERRICK FEINSTEIN LLP
Jackson Lewis P.C.
Law Offices of Alexander T. Winsberg
Norton Rose Fulbright
PWC & related entities
Carey Olsen Jersey LLP
Teneo

**Contract Counterparties**

ADI UK Ltd (LED screen supplier, Bolton, UK)
Andy Ogletree

Anirban Lahiri
Aramco Overseas Company B.V.
Aviation Services Company (d/b/a Riyadh Air)
Banco Santander SA
Ben Campbell
Ben Schmidt
Bernd Wiesberger
Bjorn Hellgren
Brendan Steele (Brendan Steele Inc.)
Cameron Tringale (CJT Capital, LLC)
Celsius Holdings Inc. (energy drink)
Champion Data Pty Ltd
Charl Schwartzel
Chase Koepka
Chieh-Po Lee
Club de Golf Chapultepec S.A. (Mexico)
Corpay, Inc.
Crown in Right of State of South Australia (SATC)
Danny Lee
DAZN Limited
Doyeob Mun
Escalante Golf
Eugenio Chacarra
Fever Labs Inc
Fox Sports 1, LLC
Frederik Kjettrup
Genesys (cloud CX technology)
Graeme McDowell (Boyport Services Limited)
Greyson Clothiers LLC
Hanwha Group (Korea)
Hendrik Du Plessis
HSBC Group Management Services Ltd
Hudson Swafford
IMG Singapore Pte Ltd
James Piot
Jamie Donaldson
Jediah Morgan
Jeongwoo Ham
Jigsaw Labs Inc.
Jinichiro Kozuma

John Catlin
Julian Perico Ibarcena
Kalle Samooja
Kalshi Inc. (prediction market platform)
Kevin Na
Kieran Vincent
Kiradech Aphibarnrat
Lamington Farm Club LLC (Trump National Golf Club Bedminster)
Laurie Canter
Louisiana Economic Development
Louisiana Economic Development (LED) / State of Louisiana
Luis Masaveu
Matt Jones
Matthew Wolff (MBW Ventures, LLC)
Max Rottluff
Mexico Infrastructure Partners S.A.
Michael La Sasso (Birdie Golf, LLC)
Miguel Tabuena
Minkyu Kim
Mito Pereira
NOBULL LLC
Par 5 Group LLC
Pat Perez
Primo Golf LLC
Qualcomm Technologies, Inc.
Ratchanon TK Chantananuwat
Reddoor 54 Ltd
Richard Bland
Richard Lee
RILUK IPCO Ltd (Authentic Brands Group / Reebok)
Rolex SA
Rubenstein Communications Inc.
Salesforce, Inc.
Saudi Arabian Mining Company
Scott Vincent
Scrottlevision Inc. (lender for David Feherty)
Shergo Al Kurdi
Sihwan Kim
Singapore Tourism Board (STB)
Stephen Lewton

The National Shipping Company of Saudi Arabia (Bahri)
The R&A (Royal and Ancient Golf Club of St Andrews)
Thomas McKibbin
Titleist Performance Institute (TPI)
Trackman A/S
Treasury Wine Estates Americas Company
Treasury Wine Estates Ltd
Turk Pettit
Underdog Sports, LLC
United States Golf Association (USGA)
Valderrama, S.A.; Real Club Valderrama
Van Wagner Communications LLC
Victor Perez
Wade Ormsby
Yosuke Asaji
Yubin Jang

**Customers**

AB Leisure Exponent Inc.
Absolute Taste Inc
Absolute Taste Ltd
Aethon Energy Operating LLC
Arena Events Services Group Limited
Asahi/CUB PTY LTD
Asian Tour Limited
Asprey London Ltd
Banque Saudi Fransi
CAMBRIDGE MERCANTILE CORP. (UK) LIMITED (O/A Corpay)
CES Power LLC
Coupang Corp
CUBE MANAGEMENT (UK) LTD
DEPARTMENT OF SPORT ARTS AND CULTURE
DISA Corporación Petrolífera, S.A.
DLF Home Developers Ltd
Eclat Media Group, Inc.
Empresa Pública para la Gestión del Turismo y del Deporte de Andalucía, S.A.
Enjoy Televisión SLU
GOLF DE MAYAKOBA SA DE CV
Hassan II Golf Trophy Association ATH

JCB Golf & Country Club Limited
Maaden
New Era Cap, LLC
Novig Sweeps LLC
OPERADORA MEXICANA DE TELEVISION SA DE CV
Outlyr, LLC
Panini America, Inc.
Prince William County Department of Economic Development
Pyjama Ltd
QUINT EVENTS LLC
Select Event Group, Inc
Seven Network (Operations) Limited
Simpler Postage Inc
Steyn City Properties (Pty) Ltd
SuperSport International Pty Ltd
TECNOLOGIA EN ENTRETENIMIENTO CALIPLAY SAPI DE CV
Telefónica Audiovisual Digital S.L.U.
The CW Network, LLC
The South African Breweries
Thomas Foods International
Thomas Foods International Pty
TNT SPORTS BROADCASTING LIMITED
TV AZTECA SAB DE CV
Wynn Resorts (Macau) S.A.

**Competitors**

DP World Tour
PGA Tour Inc.

**Suppliers and Vendors**

31south Agency, LLC
50 HUDSON YARDS / Related Companies
89 Blocks Holding LLC (dba EverWonder Studio)
Abraham Ancer; Abraham Ancer Golf, LLC
Adrian Meronk
Air Partner
Anthony Kim
Applause App Quality, Inc.
ATD Electrical Ltd
Bamko LLC

BEHIND THE VOLT LIMITED
Beverly Hills Aerials
BOKEH BLUR
Bolt6 Limited
Branden Grace
Brooks Koepka Golf LLC
Bryson DeChambeau; Bad Enterprises Inc
Bubba Watson
Byeong Hun An
Caleb Surratt
Carlos Ortiz
Charles Howell III
CITY PARK CONSERVANCY
Consolidated Printing Inc
Corporate Travel Management (United Kingdom)
Coyne Public Relations, LLC
Creative Artists Agency (CAA) Sports
CRITERION GLOBAL
CSG INTERNATIONAL LLC
David Puig
De Tweede Kamer Cinema Inc
Dean Burmester
Deltatre S.p.A.
Discovery Education, Inc.
Dr Harry Sese
DRIVE MARKETING
Dustin Johnson Enterprises, Inc.
EA DESIGNS LIMITED
Elvis Smylie
ENCOMPASS DIGITAL MEDIA
Evolution Sports Rights Limited
Fundación Valderrama
Gerry L Watson
GL EVENTS UK LTD
Golf Australia Limited
Google LLC
Gulf Hill & Knowlton WLL t/a Burson
Gusto
Harold Varner III
HAVOC LIVE, LLC

HONG KONG GOLF CLUB
IMG MEDIA LTD.
INTERNATIONAL SPORTS CONSULTANCY
IRIS ADVISORS LIMITED
J Carter Sporting Club Limited, (T/A Castore)
Jason Kokrak
Josele Ballester
LIV GOLF INC
Live Nation Worldwide Inc
LIVELIKE INC.
Lucas Herbert
Marc Leishman
Marina Bay Sands Pte Ltd
Marx Realty & Improvement Co. Inc
MDLBEAST Company
MING ENTERTAINMENT GROUP
MKW PARTS T/A LUXURYCARTS UK
monday.com
NEP Supershooters LP
OSF Digital UK Ltd
Papaya Global Inc.
Paul Casey
Performance 54
Pershing LLC
Peter Uihlein (Cowboy Golf5, LLC)
PGA European Tour
PRG Golf Inc
Provisions Group LLC
PSL LLC
Pulse Innovations Limited
R&A Championships Limited
Red Door 54 Event Management LLC
Rick Shiels Media Limited
Rock-It Cargo
Safari Telecom, Inc
Sam Horsfield
Sebastian Munoz
Sela Co. Ltd
SOS Global Express Inc.
South Australian Tourism Commission

Southern Guards GC Foundation NPC
SportFive Golf LLC
SportsMEDIA Technology Corp
Talor Gooch
Tata Communications (UK) Limited
The Russell Partnership (UK) Ltd
THE.TEAM
Thomas Detry
Thomas Pieters (TPM BV)
Travel Counsellors
TRUMP NATIONAL GOLF CLUB WASHINGTON DC
Twenty First Group Limited
Tyrrell Hatton; Tyrell Hatton Golf Limited
Tysinger Promotions Inc
Uber
UNITED NATIONS HIGH COMMISSIONER FOR REFUGEES
ViewLift Inc
VISUAL VERTIGO
WME Entertainment
YoungHan Song

**Real Estate Leases**

222 Lakeview, LLC
Blank Rome LLP
Industrious SDL 15051 North Kierland Boulevard LLC

**Insurance Brokers**

1783 Group
Acrisure
The James B. Oswald Company

**Insurance Providers**

Allianz
Associated Industries Insurance Company
AXA XL Insurance
Beazley
Chubb
Columbia Casualty Company (CNA)
Convex Guernsey Limited
HDI Global Specialty

IQUW Syndicate
Liberty Specialty Markets
Lloyd's of London
MS Amlin Underwriting
Navigators
Ohio Bureau of Workers' Compensation
Palomar Excess and Surplus Insurance (Applied Entertainment & Sports)
RenaissanceRe Syndicate
Republic - Vanguard Insurance Company
SiriusPoint Specialty Insurance Corporation
Starfish Aviation Insurance
State of Washington
The Hartford
Travelers
Twin City Fire Insurance
Vantage Risk Specialty Insurance Company
Westfield Specialty Insurance

**Benefit Providers / TPAs**

Ameriflex
Armada Administrators LLC
Aviva
BlackHawk
Bupa
CBIZ
Cigna
Cycle2Work
Enjoy Benefits
Fidelity
Insights COBRA and Retirees
Mercer
Mutual of Omaha
Simply Health
Taste Card
Unum
Zurich

**Utility Providers**

Cablevision Lightpath
Comcast Business

Florida Power & Light
LUMEN
Pilot
SSE ENERGY SOLUTIONS
VERIZON
Vodafone

**Independent Staffing Agencies**

CDW
Tech Holdings

**Banks**

Barclays
JP Morgan Chase

**Creditor Professionals (Non-retained)**

FTI Consulting
White & Case

**Potential Purchasers / Investors**

[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]
[Redacted]

**Litigation Parties - Where Client is the Defendant (Debtor Counsel)**

Bird & Bird
Frankfurt Kurnit Klein+Selz
Golden, Rothschild, Spagnola, Lundell, Boylan, Garubo & Bell P.C.
Greenberg Traurig
Norton Rose
Shoosmiths
TSMP Law Corporation

**Litigation Parties - Where Client is the Defendant (Plaintiff)**

adidas AG
adidas International Marketing B.V.
Andrew Gardnier
BMG Rights Management GmbH 2025
Canal+
Carl Drury
Concord Music Group, Inc.
Debbie Allen
Dustin Johnson
Fantasy Interactive, Inc.
Fresh Tape Media LLC
Giorgio Armani
Giant Manufacturing Co.
GOAT retailer
Haskell
Ing Ratanavadi
Kobalt Music Publishing America, Inc.
Long Island Vodka
MN25
Mobii
Patrick Reed
Premier Golf League
Sarath Ratanavadi
Skechers
Stinger Tees
Stonehill Estate Co.
University of Alabama
World Golf Group Limited

**Litigation Parties - Where Client is the Defendant (Opposing Counsel)**

BraunHagey & Borden LLP
Bursor & Fisher, P.A.
Davidoff Hutcher & Citron LLP
Davinder Singh Chambers LLC
Enyo Law
Harrington Legal Alliance
JMW Solicitors LLP
Jones Walker LLP
Kilpatrick Townsend & Stockton
Phillip B. Costa
Reinhardt Savic Foley LLP
Serafini & Serafini, P.C.
Walker Morris LLP

**Federal, State and Local Taxing Authorities**

Arizona Department of Revenue
California Department of Tax and Fee Administration
Central Board of Direct Taxes (CBDT)
Colorado Department of Revenue
Connecticut Department of Revenue Services
Florida Department of Revenue
Georgia Department of Revenue
Idaho State Tax Commission
Illinois Department of Revenue
Indiana Department of Revenue
Internal Revenue Service (IRS)
Iowa Department of Revenue
Kansas Department of Revenue
Maryland Department of Assessments and Taxation
Massachusetts Department of Revenue
Michigan Department of Treasury
New Jersey Division of Taxation
New York City Department of Finance
New York Department of Taxation and Finance
North Carolina Department of Revenue
Oklahoma Tax Commission
Oregon Department of Revenue
Pennsylvania Department of Revenue
South Carolina Department of Revenue and Taxation

State Tax Authorities (varies by state)
Tennessee Department of Revenue
Texas Comptroller of Public Accounts
Utah State Tax Commission
Virginia Department of Taxation
West Virginia State Tax Department

**Foreign Taxing Authorities**

Agencia Tributaria
Australian Taxation Office (ATO)
General Authority of Zakat and Tax (GAZT)
His Majesty's Revenue and Customs (HMRC)
Inland Revenue Authority of Singapore (IRAS)
Inland Revenue Department (IRD)
National Tax Service (NTS)
Office of the Revenue Commissioners
Revenue Jersey
Servicio de Administración Tributaria (SAT)
South African Revenue Service (SARS)