# Cross-Border Insolvency Protocol

## LIV Golf

## 1. PARTIES

This cross-border insolvency protocol (the "**Protocol**") shall govern the conduct of the parties to it and any person acceding to it (the "**Parties**", and each a "**Party**") in relation to the Proceedings (as defined below), being:

(A) The Jersey Companies:

(i) LIV Golf Investments Ltd (in administration), a private company limited by shares with registered number 136610 and its registered office at 19-21 Broad Street, St Helier, Jersey, JE2 3RR (the "**Parent**"); and

(ii) LIV Golf Holdings Ltd (in administration), a private company limited by shares with registered number 136131 and its registered office at 19-21 Broad Street, St Helier, Jersey, JE2 3RR ("**Holdings**"),

each acting by their joint administrators Andy McFarlane Wood of Teneo Financial Advisory Limited, 11 Pilgrim Street, London, EC4V 6RN and Alastair Beveridge of AlixPartners UK LLP, One Millennium Bridge, 1 High Timber Street, London, EC4V 3HT, each without personal liability (the "**Joint Administrators**"); and

(B) each entity listed in Schedule 1, each of which has filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (as defined below) (each a "**Debtor**").

## 2. DEFINITIONS AND INTERPRETATION

2.1 In the interpretation of this Protocol, due regard shall be given to its international origin and to the need to promote good faith and uniformity in its application.

2.2 For the purposes of this Protocol, unless the context otherwise requires, the word "person" shall include a corporation, words importing any gender shall include the other gender, the singular shall include the plural and vice versa and the following words and expressions shall have the following meanings:

(a) "**Bankruptcy Code**" means title 11 of the United States Code, as amended.

(b) "**Companies Law**" means the Companies (Jersey) Law 1991, as amended.

(c) "**Courts**" means the Jersey Court and the US Court.

(d) "**Group**" means the Parent and each of its direct and indirect subsidiaries.

(e) "**Jersey Companies**" means Parent and Holdings.

(f) "**Jersey Counsel**" means Carey Olsen Jersey LLP as Jersey law counsel to the Debtors.

(g) "**Jersey Court**" means the Royal Court of Jersey.

(h) "**Jersey Proceedings**" has the meaning given in Clause 3.3.

(i) "**Joint Administrators**" has the meaning given in recital (A).

(j) "**Lead Counsel**" means Gibson, Dunn & Crutcher LLP as US counsel to the Debtors.

(k) "**PIF**" means The Public Investment Fund of the Kingdom of Saudi Arabia.

(l) "**Proceedings**" means the Jersey Proceedings and the US Proceedings.

(m) "**Secured Creditor Counsel**" means White & Case LLP as counsel to PIF.

(n) "**US Court**" means the United States Bankruptcy Court for the District of New Jersey.

(o) "**US Proceedings**" has the meaning given in Clause 3.2.

## 3. BACKGROUND

3.1 The Jersey Companies own, directly or indirectly, a majority stake in each other Debtor.

3.2 On 8 September 2026, each Debtor and the Jersey Companies filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the US Court (the "**US Proceedings**"). The cases are jointly administered under *In re LIV Golf New Jersey LLC, et al.*, Case No. 26-20189 (MBK) and in such regard:

(a) the Jersey Companies continue to manage their property and affairs as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code; and

(b) the Debtors appointed David Orlofsky of AP Services, LLP as the chief restructuring officer of the Debtors (the "**CRO**") prior to commencement of the US Proceedings.

3.3 On [•] September 2026, the Jersey Court made administration orders in respect of each Jersey Company under Article 143D of the Companies Law appointing the Joint Administrators (the "**Jersey Proceedings**"). Pursuant to Article 143D(5) of the Companies Law, during the period that an administration order is in force, the Joint Administrators must manage the affairs, business and property of the company.

## 4. PURPOSE

4.1 While the Proceedings are separate proceedings before the respective Courts, the implementation of this Protocol is desirable to coordinate the efficient administration of the Proceedings and establish the terms on which the Joint Administrators efficiently oversee, monitor and consent to the exercise of the directors' powers of management of the Jersey Companies in the US Proceedings.

4.2 The Protocol has therefore been developed to promote and facilitate the fair, open, orderly and efficient administration of the Proceedings to, among other things, maximise the efficiency of the same, reduce the costs associated therewith, and avoid the duplication of work and effort (including avoiding any duplication arising out of multiple appointments of professional advisors) for the benefit of all stakeholders.

4.3 This Protocol has been agreed between the Parties and will be submitted to the Jersey Court in final draft form and to the US Court in final form.

## 5. GOALS

5.1 The Joint Administrators' objective in the Jersey Proceedings is to achieve either the rescuing of the Jersey Companies or the whole or any part of their undertakings as going concerns and/or achieve a more advantageous realisation of their assets than would be achieved by winding up. They consider it reasonably likely that one or both of those purposes will be achieved via the US Proceedings and the proposed process pursuant to those proceedings to be conducted by the directors of the Jersey Companies as part of the wider group of Debtors.

5.2 The Debtors' objective in the US Proceedings is to preserve and realise the value of the Debtors' business and assets for the benefit of stakeholders. As at the date of this Protocol, the Debtors are pursuing in the alternative:

(a) if agreed with the counterparty to such transaction within 30 days of the commencement of the US Proceedings, a going-concern transaction, being a new money investment in the Group's business (in whole or in part), pursuant to a plan of reorganisation under the Bankruptcy Code;

(b) failing (a), a wind-down plan or conversion of the US Proceedings to cases under chapter 7 of the Bankruptcy Code.

5.3 In each case, the plan submitted in the US Proceedings is expected to provide for the distribution of realisations, to the extent any, to creditors, the cancellation of existing equity interests and the dissolution of the non-US Debtors, including the Jersey Companies.

5.4 The US Proceedings may therefore result in the achievement of either a going-concern transaction, or a wind-down process realising the value of the Jersey Companies' assets. It is expected that, in distributing realisations to creditors, the US Proceedings will achieve more advantageous realisations than those that would have been otherwise achieved by an immediate winding-up of the Jersey Companies pursuant to a local procedure within Jersey.

## 6. CO-OPERATION ARRANGEMENTS

In furtherance of Clauses 4 and 5, the Parties hereby agree for the duration of the Proceedings that they will act in accordance with this Clause 6.

6.1 *Nature of the Proceedings*:

(a) The Parties acknowledge that (i) the Joint Administrators must act in accordance with their duties and within the powers given to them by the Companies Law

and the Jersey Court; and (ii) the US Proceedings are the principal forum in which the restructuring of the Group and any transaction may be pursued and implemented by the directors of the Jersey Companies, with the oversight, monitoring and consent of the Joint Administrators.

(b) The Debtors acknowledge that the Jersey Companies and/or their officers may not perform any function conferred upon them that could be performed in a way that interferes with the performance by the Joint Administrators of their functions except with the specific or general consent of the Joint Administrators. Recognising the potential for delays and additional costs, neither of which are in the interests of stakeholders, the Joint Administrators will endeavour to provide such consents efficiently and expeditiously in as pragmatic and wide terms as may be considered by them to be appropriate, mindful always of their duties.

(c) Any disposal, transfer or encumbrance of shares or other property of a Jersey Company, the execution of any Jersey law governed document on behalf of a Jersey Company, any dealing with or release of the security granted by a Jersey Company in favour of PIF, and any application to the Jersey Court on behalf of a Jersey Company, shall be effected by the Joint Administrators.

(d) The Parties shall conduct the Proceedings in a manner consistent with the goals as described in Clause 5 above.

6.2 *Information sharing*:

(a) The Debtors (acting by the CRO or their directors) shall provide information on a frequent and regular basis to the Joint Administrators, including, without limitation, as to:

(i) the actions or decisions to be taken, or taken by, the Debtors in respect of the Jersey Companies;

(ii) the status of any negotiations relating to the sale or disposal of any assets of the Jersey Companies;

(iii) the filing by the Debtors of any plan of reorganisation in the US Proceedings; and

(iv) the terms of any budget to be filed in the US Proceedings.

(b) In addition, the Debtors shall provide such information as the Joint Administrators may request so as to enable them to give the consent referred to in Clause 6.1(b) above.

(c) Each Party agrees to assist the other in the discharge of the applicable statutory and reporting obligations relevant to their respective Proceedings, including by providing such further information as may be required in connection thereto.

(d) Each Party shall preserve the books and records of the Jersey Companies and Debtors in its possession or control, shall make them available to the other Party

on request and shall not destroy or dispose of them, except as ordered or permitted by both the US Court and the Jersey Court.

6.3 *Regular communication*:

(a) The Parties agree to hold regular meetings between the Joint Administrators, the CRO, Jersey Counsel and Lead Counsel to discuss all matters pertinent to the Proceedings.

(b) Each Party agrees to keep the other Parties informed of all material developments in the proceeding in which it is engaged.

6.4 *Notice of Proceedings*:

(a) The Debtors shall add the Joint Administrators and Jersey Counsel to the service list in the US Proceedings and shall procure that they are given notice of all hearings, motions, applications and orders.

(b) The Joint Administrators shall give Lead Counsel and Secured Creditor Counsel notice of all applications and hearings in the Jersey Proceedings, together with copies of any order made and of the notice and reports issued under the Companies Law.

6.5 *Costs*:

(a) Budgetary provision has been made within the US Proceedings for the costs of the Jersey administration. The Jersey Court shall have exclusive jurisdiction in respect of the remuneration, costs and expenses of the Joint Administrators (including the fees of Jersey Counsel), which are payable out of the assets of the Jersey Companies in accordance with the Companies Law.

(b) Subject to any retention and compensation orders made in the US Proceedings, the US Court shall have exclusive jurisdiction in respect of the compensation of the professionals rendering services in the US Proceedings.

6.6 *Conclusion of Proceedings*: the Parties shall co-operate in sequencing the steps required to conclude the Proceedings, including in any application by the Joint Administrators to the Jersey Court for the discharge of the administration orders and the release of the Joint Administrators from liability. The timing and basis of any such application by the Joint Administrators shall be solely determined by them.

**7. GENERAL**

7.1 The Parties are authorised to take such actions and execute such documents as may be necessary or appropriate to implement and effectuate this Protocol.

7.2 This Protocol is procedural in nature. It shall not (a) confer jurisdiction on either Court which it would not otherwise have; (b) cause any Party to submit to the jurisdiction of a Court other than the Court having jurisdiction over the proceeding in which it is engaged; or (c) prejudice or affect the powers, rights, claims or defences of any Party, any creditor or any other person under applicable law.

7.3 If a Party is directed by a Court to act, or not to act, in a manner that conflicts with its obligations under this Protocol, that Party shall be relieved of that obligation only under this Protocol and shall promptly notify the other Parties in writing of the conflict. The relevant Party shall continue to be bound by the Protocol in all other respects.

7.4 Each Party represents and warrants to each other Party that its execution, delivery and performance of this Protocol are within its power and authority and have been duly authorised.

7.5 The Joint Administrators enter into and sign this Protocol solely as agents of the Jersey Companies and without personal liability. Neither the Joint Administrators, their firms, nor any of their partners, directors, officers, employees, agents, advisers or representatives shall incur any personal liability whatsoever under or in connection with the Protocol.

7.6 Notwithstanding anything to the contrary contained herein, nothing in this Protocol shall impair, restrict, impede, or otherwise affect the responsibilities, duties, or obligations of David Orlofsky in his capacity as CRO of the Debtors or APS in connection with the U.S. Proceedings.

7.7 This Protocol shall take effect on the date on which the Jersey Companies enter into administration, and shall have no binding or enforceable legal effect before that date.

7.8 This Protocol shall not be amended, modified, terminated or replaced except in writing signed by all Parties. Further parties may accede to this Protocol by agreement between the Parties.

7.9 This Protocol shall be binding on and enure to the benefit of the Parties and their respective successors, assigns and representatives, including any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code and any administrator appointed in Jersey.

7.10 Notices under this Protocol shall be given by email to the addresses on the execution block for each Party.

7.11 Without prejudice to Clause 7.2, any dispute arising out of or in connection with this Protocol may be referred to either Court. The Court to which the dispute is referred may consult the other Court and may, in its discretion, (a) determine the dispute; (b) transfer it in whole or in part to the other Court; or (c) seek a joint hearing of both Courts.

7.12 This Protocol may be signed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed to be one and the same instrument, and may be signed by PDF signature, which shall be deemed to constitute an original signature.

**EXECUTION**

IN WITNESS WHEREOF the Parties have caused this Protocol to be executed either individually or by their respective attorneys or representatives hereunto authorised.

For and on behalf of:

…………………………………….

LIV Golf Investments Ltd (in administration) &

LIV Golf Holdings Ltd (in administration)

Name: Andy McFarlane Wood

Role: Joint Administrator of LIV Golf Investments Ltd (in administration) and LIV Golf Holdings Ltd (in administration)

Date:

E-mail:

For and on behalf of:

…………………………………….

The Debtors set forth on Schedule 1

Name: David Orlofsky

Role: Chief Restructuring Officer

Date:

E-mail:

SCHEDULE 1

THE DEBTORS

1. Wedge IP Management Co, Limited
2. LIV Golf Ltd
3. LIV Golf Events (ISE) Ltd
4. LIV Golf Events Ltd.
5. LIV Golf Incorporated
6. LIV Golf US Media, LLC
7. Wedge Event 1 Co
8. Wedge Event 2 Co
9. Wedge Event 3 Co
10. Wedge Event 4 Co
11. Wedge WPB Inc.
12. Wedge Event 7 Co
13. Wedge IP Management Co, LLC
14. LIV Golf New Jersey LLC
15. Fairway TM Blocker 1, LLC
16. Fairway TM Co 1, LLC
17. Fairway TM Intermediate 1, LLC
18. Fairway TM Blocker 2, LLC
19. Fairway TM Co 2, LLC
20. Fairway TM Intermediate 2, LLC
21. Fairway TM Blocker 3, LLC
22. Fairway TM Co 3, LLC
23. Fairway TM Intermediate 3, LLC
24. Fairway TM Blocker 4, LLC
25. Fairway TM Co 4, LLC
26. Fairway TM Intermediate 4, LLC
27. Fairway TM Blocker 5, LLC
28. Fairway TM Co 5, LLC
29. Fairway TM Intermediate 5, LLC
30. Fairway TM Blocker 6, LLC
31. Fairway TM Co 6, LLC
32. Fairway TM Intermediate 6, LLC
33. Fairway TM Blocker 7, LLC
34. Fairway TM Co 7, LLC
35. Fairway TM Intermediate 7, LLC
36. Fairway TM Blocker 8, LLC
37. Fairway TM Co 8 GP, LLC
38. Fairway TM Co 8, LP
39. Fairway TM Intermediate 8, LLC
40. Fairway TM Blocker 9, LLC
41. Fairway TM Co 9, LLC

42. Fairway TM Intermediate 9, LLC
43. Fairway TM Blocker 10, LLC
44. Fairway TM Co 10, LLC
45. Fairway TM Intermediate 10, LLC
46. Fairway TM Blocker 11, LLC
47. Fairway TM Co 11, LLC
48. Fairway TM Intermediate 11, LLC
49. Fairway TM Blocker 12, LLC
50. Fairway TM Co 12 GP, LLC
51. Fairway TM Co 12, LP
52. Fairway TM Intermediate 12, LLC
53. Fairway TM Blocker 13, LLC
54. Fairway TM Co 13, LLC
55. Fairway TM Intermediate 13, LLC