**GIBSON, DUNN & CRUTCHER LLP**
Scott J. Greenberg (admitted *pro hac vice*)
Matthew J. Williams (admitted *pro hac vice*)
Keith R. Martorana (admitted *pro hac vice*)
Robert E. Fitzgerald (admitted *pro hac vice*)
Tommy Scheffer (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
sgreenberg@gibsondunn.com
mjwilliams@gibsondunn.com
kmartorana@gibsondunn.com
rfitzgerald@gibsondunn.com
tscheffer@gibsondunn.com

*Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Anthony De Leo, Esq.
Matteo Percontino, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
adeleo@coleschotz.com
mpercontino@coleschotz.com

*Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LIV GOLF NEW JERSEY LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-20189 (MBK)<br><br>(Jointly Administered) |

# JOINT CHAPTER 11 PLAN OF LIV GOLF NEW JERSEY LLC AND ITS DEBTOR AFFILIATES[2]

1 The last four digits of Debtor LIV Golf New Jersey LLC's tax identification number are 5081. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/livgolf. The location of the Debtors' service address in these chapter 11 cases is 2093 Philadelphia Pike #2054, Claymont, DE 19703.

2 All Definitive Documents (as defined herein and in the Amended Plan Term Sheet), including this Plan and the Disclosure Statement, remain subject to ongoing review, revision, and further negotiation by the Debtors and PIF, who have various consent rights over the final forms of Definitive Documents. Definitive Documents may be amended, modified, supplemented, and revised in accordance with those ongoing negotiations. All parties reserve their rights to make additional revisions to this Plan and the Disclosure Statement.

# TABLE OF CONTENTS

**Page**

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ................................1**

A. Defined Terms ........................................................................................1
B. Rules of Interpretation ...............................................................................15
C. Computation of Time ...................................................................................16
D. Governing Law ..........................................................................................16
E. Reference to Monetary Figures .........................................................................16
F. Reference to the Debtors or the Post-Effective Date Debtors ..................................16
G. Controlling Document ..................................................................................16
H. Consultation, Notice, Information, and Consent Rights ..........................................17

**ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS..........................................................................................................17**

A. Administrative Claims ..................................................................................17
B. DIP Claims ...............................................................................................18
C. Priority Tax Claims ....................................................................................18
D. Professional Fee Claims ...............................................................................18

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS, EQUITY INTERESTS, AND INTERCOMPANY INTERESTS ..................................19**

A. Classification of Claims and Interests ...............................................................19
B. Treatment of Claims and Interests ....................................................................20
1. Class 1 — Other Secured Claims .......................................................................21
2. Class 2 — Other Priority Claims .......................................................................21
3. Class 3 — Prepetition Facility Claims ................................................................22
4. Class 4 — General Unsecured Claims .................................................................22
5. Class 5 — Intercompany Claims .......................................................................22
6. Class 6 — Section 510(b) Claims ......................................................................23
7. Class 7 — Existing Equity Interests ..................................................................23
8. Class 8 — Intercompany Interests .....................................................................23
C. Special Provision Governing Unimpaired Claims ..................................................24
D. Elimination of Vacant Classes ........................................................................24
E. Voting Classes, Presumed Acceptance by Non-Voting Classes...............................24
F. Intercompany Interests ..................................................................................24
G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ......................................................................................24
H. Controversy Concerning Impairment ..................................................................24
I. Subordinated Claims .....................................................................................25

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN.......................25**

A. General Settlement of Claims, Interests, and Intercompany Interests.......25
B. Wind-Down.......................................................................................25
C. Director and Officer Liability Insurance..................................................27
D. Cancellation of Notes, Instruments, Certificates, and Other Documents ..27
E. Section 1146 Exemption.......................................................................28
F. Corporate Action; Effectuating Documents; Preservation of Causes of Action.......................................................................................28
1. Corporate Action.......................................................................................28
2. Effectuating Documents; Further Transactions........................................29
3. [Reserved.].......................................................................................29
4. Preservation of Causes of Action.............................................................29

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.......................................................................................30**

A. Assumption and Rejection of Executory Contracts and Unexpired Leases .......................................................................................30
B. Indemnification Obligations.....................................................................31
C. Claims Based on Rejection of Executory Contracts or Unexpired Leases 31
D. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .......................................................................................32
E. Insurance Policies.......................................................................................33
F. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.......................................................................................34
G. [Reserved.].......................................................................................34
H. Modifications, Amendments, Supplements, Restatements, or Other Agreements.......................................................................................34
I. Reservation of Rights.......................................................................................34
J. Nonoccurrence of Effective Date.............................................................34
K. Contracts and Leases Entered Into After the Petition Date.......................35

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS.............................35**

A. Timing and Calculation of Amounts to Be Distributed............................35
B. Disbursing Agent.......................................................................................35
C. Rights and Powers of Disbursing Agent..................................................35
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions 36
E. Manner of Payment.......................................................................................37
F. Compliance with Tax Requirements.........................................................38
G. Allocations.......................................................................................38
H. No Postpetition Interest on Claims..........................................................38
I. Foreign Currency Exchange Rate............................................................39

J. Setoffs and Recoupment ....39
K. Claims Paid or Payable by Third Parties ....39

**ARTICLE VII. THE WIND-DOWN TRUST ....40**

A. Establishment of the Wind-Down Trust ....40
B. The Wind-Down Trustee ....40
C. Wind-Down Budget; Costs of Administration ....41
D. Distributions from the Wind-Down Trust....41
E. Tax Treatment; Dissolution ....41
F. Securities Law Matters ....43

**ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ....43**

A. Disputed Claims Process....43
B. Allowance of Claims....44
C. Estimation of Claims and Interests ....44
D. Claims Administration Responsibilities ....45
E. Time to File Objections to Claims ....45
F. Adjustment to Claims or Interests without Objection....45
G. Disputed and Contingent Claims Reserve ....45
H. Disallowance of Claims ....45
I. Amendments to Proofs of Claim....46
J. Distributions Pending Allowance ....46
K. Distributions After Allowance ....46

**ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS....47**

A. No Discharge; Termination of Interests and Intercompany Interests ....47
B. Release of Liens ....47
C. Releases by the Debtors ....48
D. Releases by Holders of Claims and Interests ....49
E. Exculpation ....51
F. Injunction ....51
G. Protections Against Discriminatory Treatment ....52
H. Document Retention ....53
I. Reimbursement or Contribution ....53
J. Preservation of Setoff Rights ....53
K. Subordination Rights ....53
L. Integral Part of Plan ....53

**ARTICLE X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ....54**

A. Conditions Precedent to Confirmation ..... 54
B. Conditions Precedent to the Effective Date ..... 54
C. Waiver of Conditions ..... 55
D. Effect of Failure of Conditions ..... 55
E. Substantial Consummation ..... 56

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..... 56**

A. Modification and Amendments ..... 56
B. Effect of Confirmation on Modifications ..... 56
C. Revocation or Withdrawal of Plan ..... 56

**ARTICLE XII. RETENTION OF JURISDICTION ..... 57**

**ARTICLE XIII. MISCELLANEOUS PROVISIONS ..... 59**

A. Immediate Binding Effect ..... 59
B. Additional Documents ..... 59
C. Payment of Statutory Fees ..... 59
D. Statutory Committee and Cessation of Fee and Expense Payment ..... 60
E. Reservation of Rights ..... 60
F. Successors and Assigns ..... 60
G. Notices ..... 60
H. Term of Injunctions or Stays ..... 61
I. Entire Agreement ..... 61
J. Exhibits ..... 61
K. Nonseverability of Plan Provisions ..... 61
L. Votes Solicited in Good Faith ..... 62
M. Closing of Chapter 11 Cases ..... 62
N. Waiver or Estoppel ..... 62

# INTRODUCTION

LIV Golf New Jersey LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") respectfully propose the following joint chapter 11 plan, providing for the orderly wind-down of the Debtors and the resolution of the outstanding Claims against, and Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of this Plan and certain related matters. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE ISSUANCE OF ANY SECURITIES REFERRED TO IN THIS PLAN SHALL NOT CONSTITUTE AN INVITATION OR OFFER TO SELL, OR THE SOLICITATION OF ANY INVITATION OR OFFER TO BUY, ANY SECURITIES IN CONTRAVENTION OF APPLICABLE LAW IN ANY JURISDICTION. NO ACTION HAS BEEN TAKEN, NOR WILL BE TAKEN IN ANY JURISDICTION THAT WOULD PERMIT A PUBLIC OFFERING OF ANY SECURITIES REFERRED TO IN THIS PLAN (OTHER THAN SECURITIES ISSUED PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE IN A DEEMED PUBLIC OFFERING) IN ANY JURISDICTION WHERE SUCH ACTION FOR THAT PURPOSE IS REQUIRED.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A. Defined Terms.

As used in the Plan, capitalized terms have the meanings set forth below.

1. "Administrative Claim" means a Claim for the costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930; and (d) all obligations of the Debtors on account of the adequate protection granted under the DIP Orders, including the Adequate Protection Liens (as defined in the DIP Orders).

2. "Administrative Claims Bar Date" means the deadline for Filing requests for payment of Administrative Claims, which shall be (a) 30 days after the Effective Date for Administrative

Claims other than Professional Fee Claims and (b) 60 days after the Effective Date for Professional Fee Claims.

3. "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

4. "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the applicable bar date (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) a Claim that is listed in the Debtors' Schedules, as may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as not contingent, not unliquidated, and not Disputed and for which no Proof of Claim asserting a different amount or classification has been timely Filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; *provided* that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, if such an objection is so interposed, such Claim shall have been Allowed by a Final Order of the Bankruptcy Court; provided, further, that unless expressly waived by the Plan or otherwise permitted by the Plan, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. "Allow" and "Allowing" shall have correlative meanings.

5. "Amended Plan Term Sheet" means the Amended Plan Term Sheet, dated October 6, 2026, between the Debtors and PIF, attached as Schedule 6 to the Amended and Restated DIP Facility Agreement filed as Exhibit 1 to the Final DIP Order [Docket No. 310], as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

6. "Assumed Executory Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Post-Effective Date Debtors pursuant to this Plan, to be included in the Plan Supplement, as may be amended from time to time in accordance with Article V.A.

7. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect and hereafter amended.

8. "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey.

9. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

10. "Blue-Sky Laws" means any state, local, or non-U.S. securities or "blue sky" laws, and the rules and regulations promulgated thereunder.

11. "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)). When a period of days under the Plan ends on a day that is not a Business Day, then such period shall be extended to the following Business Day.

12. "Cash" means cash and cash equivalents, including bank deposits, checks, and other similar items in the legal tender of the United States of America.

13. "Cash Collateral" has the meaning set forth in section 363(a) of the Bankruptcy Code.

14. "Cause of Action" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in Law or in equity, or pursuant to any other theory of Law (including under any state or federal securities laws). Causes of Action include: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by Law or in equity, (b) the right to object to Claims and Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state Law fraudulent transfer claim.

15. "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

16. "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

17. "Claims Objection Deadline" means the date that is the later of: (a) one hundred eighty (180) days after the Effective Date; (b) such other period of limitation as may be specifically fixed by the Debtors or Post-Effective Date Debtors, as applicable; and (c) such other period of limitation as may be specifically fixed by the Bankruptcy Court, for objecting to such Claims.

18. "Claims Register" means the official register of Claims against, and Interests in, the Debtors maintained by the Clerk of the Bankruptcy Court or the Solicitation Agent.

19. "Class" means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

20. "CM/ECF" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

21. "Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Cases by the United States Trustee pursuant to section 1102 of the Bankruptcy Code on September 30, 2026 [Docket No. 175], as it may be reconstituted from time to time.

22. "Company Parties" means LGIL and each of its subsidiaries and Affiliates listed on Exhibit II to the Amended Plan Term Sheet, each of which is a Debtor.

23. "Confirmation" means the Bankruptcy Court's entry of the Confirmation Order.

24. "Confirmation Date" means the date upon which Confirmation occurs.

25. "Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

26. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, supplemented, or modified from time to time, which shall be consistent with the Amended Plan Term Sheet and otherwise in form and substance acceptable to the Debtors and PIF.

27. "Consummation" means the occurrence of the Effective Date.

28. "Cure" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

29. "Debtor" means each of the Debtors in its individual capacity as debtor and debtor in possession in the Chapter 11 Cases.

30. "Debtor Release" means the release set forth in Article IX.C hereof.

31. "Debtors" means collectively, LIV Golf New Jersey LLC and the 56 other debtors and debtors in possession in the Chapter 11 Cases listed on Exhibit A hereto.

32. "Definitive Documents" means the documents required to effectuate this Plan, including but not limited to, this Plan, the Disclosure Statement, the Plan Supplement, the Wind-Down Trust Agreement, the Wind-Down Budget, and the Confirmation Order, each of which shall be consistent with the Amended Plan Term Sheet and subject to the consent rights set forth therein.

33. "DIP Claims" means any Claim against a Debtor on account of, arising under, or relating to the DIP Facility or the DIP Loan Documents, including all principal, interest, fees, premiums, expenses, indemnities, and other obligations thereunder, including all DIP Obligations (as defined in the Final DIP Order).

34. "DIP Credit Agreement" means that certain Debtor-in-Possession Facility Agreement, originally dated September 17, 2026, by and among LIV Golf Incorporated, as borrower, the other Debtors party thereto, as guarantors, and PIF, as lender, as amended and restated pursuant to the Final DIP Order, and as further amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms and the DIP Orders.

35. "DIP Facility" means the senior secured superpriority priming debtor-in-possession facility provided under the DIP Credit Agreement and approved by the DIP Orders.

36. "DIP Lender" means PIF, in its capacity as lender under the DIP Facility, together with its permitted successors and assigns.

37. "DIP Loan Documents" means the DIP Credit Agreement and all other agreements, documents, and instruments delivered or executed in connection therewith, in each case as amended, restated, supplemented, or otherwise modified from time to time in accordance with the DIP Orders.

38. "DIP Orders" means collectively, the Interim DIP Order and the Final DIP Order.

39. "Disallowed" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed; (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; (e) has been withdrawn by the Holder thereof; (f) has been reclassified, expunged, subordinated, or estimated pursuant to a Final Order of a court of competent jurisdiction to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in the Filed amount of any Proof of Claim, Interest, or Intercompany Interest; (g) is evidenced by a Proof of Claim, Interest, or Intercompany Interest that was not timely and properly Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court which is required to be filed by order of the Bankruptcy Court but as to which such Proof of Claim, Intercompany Interest, or Interest was not timely or properly filed; (h) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; or (i) where the Holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity, or transferee has paid the amount, or turned over any such property, for which such Person, Entity, or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim, Disallowed Interest, or Disallowed Intercompany Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

40. "Disbursing Agent" means the Post-Effective Date Debtors or any Entity the Debtors or the Post-Effective Date Debtors, as applicable, select to make or to facilitate distributions in accordance with the Plan, which Entity may include the Solicitation Agent, as applicable.

41. "Disclosure Statement" means the disclosure statement in respect of the Plan, including all exhibits and schedules thereto, each as may be amended, supplemented, or modified from time to time, which shall be consistent with the Amended Plan Term Sheet and otherwise in form and substance acceptable to the Debtors and PIF.

42. "Disclosure Statement Order" means any order of the Bankruptcy Court approving the adequacy of the Disclosure Statement, which shall be consistent with the Amended Plan Term Sheet and otherwise in form and substance acceptable to the Debtors and PIF.

43. "Disputed" means, as to a Claim, Interest, or Intercompany Interest, a Claim, Interest, or Intercompany Interest: (a) that is not Allowed; (b) that is not Disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

44. "Distribution Record Date" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first day of the Confirmation Hearing or such other date as determined by the Debtors in consultation with PIF.

45. "D&O Liability Insurance Policies" means all Insurance Policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', and officers' liability and all agreements, documents, or instruments relating thereto.

46. "Effective Date" means the date on which (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent to the occurrence of the effectiveness of this Plan have been satisfied or waived in accordance with Article X.C of this Plan, (c) this Plan has been substantially consummated, and (d) a notice of the effective date of this Plan has been Filed on the docket of the Chapter 11 Cases.

47. "Entity" means any entity, as defined in section 101(15) of the Bankruptcy Code.

48. "Estate" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

49. "Exchange Act" means the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a et seq., and the rules and regulations promulgated thereunder.

50. "Exculpated Parties" means collectively, and in each case in its capacity as such: (a) each Debtor; (b) the Special Committee and each member thereof; (c) each current and former director, officer, and manager of the Debtors who served in such capacity at any time between the Petition Date and the Effective Date; (d) the Committee and each of its members; and (e) each Related Party of each Entity in clauses (a) through (d).

51. "Executory Contract" means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

52. "Existing Equity Interests" means the Interests in LIV Golf Investments Ltd outstanding immediately prior to the Effective Date.

53. "Federal Judgment Rate" means the federal judgment rate in effect as of the Petition Date.

54. "File" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases. "Filed" and "Filing" shall have correlative meanings.

55. "Final DIP Order" means the final order of the Bankruptcy Court approving the DIP Facility and granting related relief [Docket No. 310].

56. "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing thereof has been timely sought, or, if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied, or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

57. "First Day Pleadings" means those certain pleadings Filed by the Debtors substantially contemporaneously with their voluntary petitions on the Petition Date.

58. "General Unsecured Claim" means any Claim against a Debtor that is not an Administrative Claim, a DIP Claim, a Professional Fee Claim, a Priority Tax Claim, an Other Secured Claim, an Other Priority Claim, a Prepetition Facility Claim, an Intercompany Claim, or a Section 510(b) Claim.

59. "Governmental Unit" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

60. "Holder" means an Entity holding a Claim against, or Interest or Intercompany Interest in, any Debtor.

61. "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

62. "Indemnification Obligations" means any obligations of the Debtors pursuant to corporate charters, certificates of incorporation or formation, bylaws, limited partnership agreements, limited liability company agreements, written deeds of indemnity, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise that are in place as of the Petition Date solely to indemnify individuals who are current and former officers, directors, individual managers, members, partners, supervisors, agents, or employees with respect to all actions, suits, and proceedings against the Debtors or such officers, directors, individual managers, members, partners, supervisors, agents, or employees, based upon any act or omission for or on behalf of the Debtors.

63. "Insurance Policies" means all insurance policies that have been issued at any time to, or provide coverage to, any of the Debtors or any of their predecessors, and all agreements, documents or instruments relating thereto, including all D&O Liability Insurance Policies.

64. "Insurer" means any insurance company or third-party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

65. "Intercompany Claim" means any Claim against a Debtor held by an Affiliate of such Debtor (including another Debtor).

66. "Intercompany Interest" means, other than an Interest, any shares (or any class thereof), common stock, preferred stock, limited liability company interests, equity security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, profits interests, puts, options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests in a Debtor held by another Debtor.

67. "Interests" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, including all shares, common stock, preferred stock, membership interests, partnership interests, or other instruments evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest, and including the Existing Equity Interests and the Intercompany Interests.

68. "Interim DIP Order" means the *Interim Order (A) Authorizing the Debtors to (I) Use Cash Collateral, (II) Obtain Senior Secured Superpriority Postpetition Financing and Granting Senior Liens and Superpriority Administrative Claims, and (III) Provide Adequate Protection, (B) Scheduling Final Hearing, and (C) Granting Related Relief* [Docket No. 79].

69. "Investigation" means the Special Committee's independent investigation regarding any potential Estate Claims and Causes of Action.

70. "Jersey Administration Completion" means the making by the Royal Court of Jersey of an administration order in respect of each Jersey Debtor under Article 143D of the Companies (Jersey) Law 1991, which order is in full force and effect and has not been reversed, vacated, or stayed.

71. "Jersey Debtors" means LIV Golf Investments Ltd and LIV Golf Holdings Ltd.

72. "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

73. "Law" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, treaty, duty, requirement, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

74. "LGIL" means LIV Golf Investments Ltd, a Jersey company.

75. "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

76. "Other Priority Claim" means any Claim, other than a DIP Claim, Administrative Claim, or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

77. "Other Secured Claim" means any Secured Claim against any Debtor other than a DIP Claim or a Prepetition Facility Claim.

78. "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

79. "Petition Date" means September 8, 2026.

80. "PIF" means the Public Investment Fund of the Kingdom of Saudi Arabia, together with its Affiliates that hold Claims against or Interests in the Debtors.

81. "PIF Cash Consideration" means $2,000,000 in Cash to be provided by PIF to the Debtors on the Effective Date for distribution Pro Rata to the Holders of Allowed General Unsecured Claims, as reduced on a dollar-for-dollar basis for fees and expenses incurred by professionals retained by the Committee in excess of the amount allocated to such professionals in the DIP Budget (as defined in the DIP Orders).

82. "Plan" means this joint chapter 11 plan Filed by the Debtors under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto, which shall be consistent with the Amended Plan Term Sheet and otherwise in form and substance acceptable to the Debtors and PIF.

83. "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than seven (7) days before the Voting Deadline, including the following, as applicable: (a) the Wind-Down Trust Agreement; (b) the identity of the Wind-Down Trustee; (c) the Wind-Down Budget; (d) the Schedule of Retained Causes of Action; (e) the Wind-Down Transactions

Memorandum; (f) the Assumed Executory Contracts and Unexpired Leases Schedule; and (g) any other documents necessary to effectuate the Wind-Down, each of which shall be consistent with the Amended Plan Term Sheet and otherwise in form and substance acceptable to the Debtors and PIF.

84. "Player" means each professional golfer that is or was party to a PPA Document with any Company Party.

85. "Player Claims" means all Claims held by the Players, including all Claims and Interests arising out of or related to the PPA Documents.

86. "Post-Effective Date Debtors" means the Debtors on and after the Effective Date, as administered by the Wind-Down Trustee pursuant to Article IV.B and Article VII of this Plan.

87. "PPA Documents" means the player participation agreements, player license and services agreements, and other agreements governing the relationship between a Player or its Affiliates and the Company Parties.

88. "Prepetition Debt Documents" means the Prepetition Facility Agreement and the other loan, guarantee, and security documents executed in connection therewith.

89. "Prepetition Facility" means the $495 million term loan facility provided by PIF to LIV Golf Holdings Ltd, as borrower, and guaranteed by the other Debtors party thereto, under the Prepetition Facility Agreement.

90. "Prepetition Facility Agreement" means that certain Facility Agreement, dated as of June 4, 2026, by and among LIV Golf Holdings Ltd, as borrower, the guarantors party thereto, and PIF, as lender, as amended, restated, supplemented, or otherwise modified from time to time.

91. "Prepetition Facility Claims" means any Claim against a Debtor on account of, arising under, or relating to the Prepetition Facility or the Prepetition Facility Agreement, in the aggregate principal amount of $495 million as of the Petition Date, plus accrued and unpaid interest, fees, and expenses.

92. "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

93. "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in all Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

94. "Professional" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

95. "Professional Fee Amount" means the aggregate amount of Professional Fee Claims (including estimated fees and expenses accrued but not yet billed through the Confirmation Date) that Professionals reasonably estimate in good faith that they have incurred or will incur in rendering services to the Debtors as set forth in Article II.D of the Plan.

96. "Professional Fee Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code. To the extent the Bankruptcy Court denies or reduces by Final Order any amount of a Professional's requested fees and/or expenses, then the amount by which such fees or expenses, as applicable, are reduced or denied shall reduce the applicable Professional Fee Claim.

97. "Professional Fee Escrow Account" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

98. "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

99. "Reinstate" means, with respect to Claims or Intercompany Interests, the treatment of such Claim, Interest, or Intercompany Interest so as to leave it Unimpaired in accordance with section 1124(1) of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

100. "Related Party" means, with respect to a specified Person, each of such Person's, and in each case in its capacity as such, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents (including any Disbursing Agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals. For the avoidance of doubt, the Debtors' Related Parties include the Special Committee and any attorneys or professionals retained by any current or former director or manager of a Debtor in his or her capacity as director or manager of a Debtor, including, for the avoidance of doubt, any attorneys or professionals retained by the Special Committee.

101. "Released Parties" means collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Post-Effective Date Debtor; (c) the Wind-Down Trustee; (d) subject in all respects to the conclusion of the Investigation and the recommendation of the Special Committee, PIF, as DIP Lender, lender under the Prepetition Facility, and equityholder; (e) the Committee and each of its members; (f) each current and former director, officer, and manager of the Debtors; (g) each Releasing Party; and (h) with respect to each of the foregoing, such Entity's Related Parties; *provided* that any Person or Entity that (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release (by formal objection Filed on the docket or by informal written objection provided to the Debtors, including by electronic mail) and does not resolve or withdraw

such objection before Confirmation shall not be a Released Party. For the avoidance of doubt, and notwithstanding anything herein to the contrary, no Person or Entity that is not a Releasing Party shall be a Released Party under this Plan.

102. "Releasing Parties" means collectively, and in each case in its capacity as such: (a) each Released Party; (b) all Holders of Claims that vote to accept the Plan and do not affirmatively opt out of the Third-Party Release; (c) all Holders of Claims that are deemed to accept the Plan and do not affirmatively opt out of the Third-Party Release; (d) all Holders of Claims that abstain from voting on the Plan and do not affirmatively opt out of the Third-Party Release by checking the box on the applicable Ballot or opt-out form; (e) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and do not affirmatively opt out of the Third-Party Release; and (f) each Related Party of each Entity in clauses (a) through (e), solely to the extent such Related Party would be obligated to grant a release under principles of agency if so directed or may assert Claims or Causes of Action on behalf of or derivatively through such Entity; *provided* that any Person or Entity that elects to opt out of the Third-Party Release or timely objects to the Third-Party Release as described in the definition of Released Parties shall not be a Releasing Party.

103. "Retained Causes of Action" means, collectively, all Claims and Causes of Action not expressly released by the Debtors pursuant to the terms of this Plan, including any Claims and Causes of Action listed on the Schedule of Retained Causes of Action.

104. "Schedule of Retained Causes of Action" means the schedule of certain Causes of Action of the Debtors (to be included in the Plan Supplement) that are not released, waived, or transferred pursuant to this Plan, as the same may be amended, modified, or supplemented from time to time.

105. "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements may have been amended, modified, or supplemented from time to time.

106. "Section 510(b) Claim" means any Claim against a Debtor arising from the rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim, in each case subject to subordination under section 510(b) of the Bankruptcy Code.

107. "Secured Claim" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

108. "Securities Act" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

109. "Security" means any security, as defined in section 2(a)(1) of the Securities Act.

110. "Solicitation Agent" means Omni Agent Solutions, Inc., in its capacity as claims, noticing, and solicitation agent for the Debtors.

111. "Special Committee" means the Strategic Initiative Committee of the board of directors of LIV Golf Holdings Ltd, comprised of the independent directors.

112. "Third-Party Release" means that certain release in Article IX.D of this Plan.

113. "Treasury Regulations" means the regulations, including temporary and proposed regulations, promulgated under the Internal Revenue Code of 1986, as amended.

114. "UK Debtors" means LIV Golf Ltd and LIV Golf Events Ltd.

115. "UK Recognition Completion" means the issuance by the High Court of Justice of England and Wales of an order recognizing the Chapter 11 Cases of the UK Debtors as foreign main proceedings (or, if foreign main proceeding recognition is not obtained, as foreign non-main proceedings with such discretionary relief as is acceptable to PIF) under the Cross-Border Insolvency Regulations 2006, which order is in full force and effect and has not been reversed, vacated, or stayed, and is not subject to any pending appeal.

116. "Unexpired Lease" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

117. "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

118. "U.S. Trustee" means the Office of the United States Trustee for the District of New Jersey.

119. "Voting Deadline" means the date and time by which all Ballots must be received by the Solicitation Agent in accordance with the Disclosure Statement Order.

120. "Wind-Down" means the orderly wind-down of the Debtors pursuant to Article IV.B and Article VII of this Plan and the Amended Plan Term Sheet, including all transactions necessary or appropriate to implement the same, the vesting of the Wind-Down Trust Assets in the Wind-Down Trust and the distribution of the proceeds thereof, net of the costs of administration, to the Wind-Down Trust Beneficiaries in accordance with this Plan and the Wind-Down Trust Agreement.

121. "Wind-Down Amount" means the $[●] in Cash to be held in a segregated account in trust and administered by the Wind-Down Trustee for payment of the costs, fees, and expenses of the Wind-Down; *provided* that nothing herein shall require PIF to extend funds beyond the aggregate amounts provided under the DIP Facility, as set forth in the DIP Credit Agreement and the DIP Orders. The Wind-Down Amount shall be held free and clear of the Liens and security interests of the DIP Lender and PIF (as lender under the Prepetition Facility), and any portion of the Wind-Down Amount remaining at the conclusion of the Wind-Down shall be distributed to the Holders of Wind-Down Trust Units in accordance with Article VII.D of this Plan.

122. "Wind-Down Budget" means the initial [●]-month budget for the Wind-Down Trustee to be included in the Plan Supplement, consistent with the Amended Plan Term Sheet and otherwise in form and substance satisfactory to the Debtors and reasonably satisfactory to PIF, which shall include amounts reasonably necessary to compensate the Wind-Down Trustee, reasonable professional fees for the retained professionals of the Wind-Down Trustee, amounts necessary to pay all Allowed Administrative Claims and Allowed Priority Tax Claims, and the other reasonable fees, costs, and expenses to be incurred from and after the Effective Date by the Wind-Down Trustee in connection with the Wind-Down.

123. "Wind-Down Transactions Memorandum" means a document to be included in the Plan Supplement that sets forth a summary of the transaction steps to implement and complete the Wind-Down, including with respect to the UK Recognition Completion and the Jersey Administration Completion.

124. "Wind-Down Trust" means the trust to be established on the Effective Date pursuant to this Plan and the Wind-Down Trust Agreement for the benefit of the Wind-Down Trust Beneficiaries.

125. "Wind-Down Trust Agreement" means the agreement governing the Wind-Down Trust, substantially in the form included in the Plan Supplement, which shall be consistent with the Amended Plan Term Sheet and otherwise in form and substance acceptable to the Debtors and PIF.

126. "Wind-Down Trust Assets" means (a) the Wind-Down Amount, (b) the Retained Causes of Action, and (c) all other assets and property of the Debtors as of the Effective Date, in each case to be vested in the Wind-Down Trust on the Effective Date free and clear of all Claims, Liens, encumbrances, charges, and other interests, including all Cash of the Debtors as of the Effective Date remaining after payment in full in Cash of the Allowed DIP Claims and the payments on account of the Allowed Prepetition Facility Claims provided for in Article II.B and Article III.B of this Plan.

127. "Wind-Down Trust Beneficiaries" means the Holders of Wind-Down Trust Units in their capacity as such.

128. "Wind-Down Trust Units" means the beneficial interests in the Wind-Down Trust to be distributed to Holders of Allowed Prepetition Facility Claims pursuant to Article III.B.3 of this Plan, entitling the Holders thereof to the distributions described in Article VII.D of this Plan, which shall be uncertificated and not transferable or assignable except by will, intestate succession, or operation of law.

129. "Wind-Down Trustee" means the Person or Entity selected by PIF, after good faith consultation with the Debtors, to serve as trustee of the Wind-Down Trust, identified in the Plan Supplement, and any successor thereto appointed in accordance with the Wind-Down Trust Agreement.

**B. Rules of Interpretation.**

For purposes of this Plan: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (iii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iv) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, amended and restated, supplemented, or otherwise modified or replaced from time to time; *provided* that any capitalized terms herein which are defined with reference to another agreement, are defined with reference to such other agreement as of the date of this Plan, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the Confirmation Date; (v) any reference to an Entity as a Holder of a Claim, Interest, or Intercompany Interest includes that Entity's successors and assigns; (vi) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (vii) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (viii) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (ix) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document created or entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with, applicable federal Law, including the Bankruptcy Code and Bankruptcy Rules; (x) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (xi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (xii) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (xiii) any term used in capitalized form herein that is not otherwise defined but that is used in the Amended Plan Term Sheet, Bankruptcy Code, or the Bankruptcy Rules shall have the meaning assigned to that term in the Amended Plan Term Sheet, the Bankruptcy Code, or the Bankruptcy Rules, as applicable; (xiv) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xv) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xvi) any immaterial effectuating provisions may be interpreted by the Post-Effective Date Debtors in such a manner that is consistent with the overall purpose and intent of this Plan, all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (xvii) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (xviii) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter; (xix) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company Laws.

### C. Computation of Time.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D. Governing Law.

Unless a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of this Plan; any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Post-Effective Date Debtors, as applicable, not incorporated or formed in New York shall be governed by the Laws of the jurisdiction or state of incorporation or formation of the relevant Debtor or the Post-Effective Date Debtor, as applicable.

### E. Reference to Monetary Figures.

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### F. Reference to the Debtors or the Post-Effective Date Debtors.

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors and the Post-Effective Date Debtors shall mean the Debtors and the Post-Effective Date Debtors, as applicable, to the extent the context requires.

### G. Controlling Document.

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and any document or instrument in the Plan Supplement, the terms of this Plan shall control, to the extent applicable (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

### H. Consultation, Notice, Information, and Consent Rights.

Notwithstanding anything herein to the contrary, all respective consultation, information, notice, and consent rights set forth in the Amended Plan Term Sheet and the DIP Credit Agreement, with respect to the form and substance of this Plan, all exhibits to this Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents,

waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein until such time as the Amended Plan Term Sheet or the DIP Credit Agreement, as applicable, is terminated in accordance with its terms. Any inclusion or exclusion of any consent, consultation, information, or notice right shall not operate to exclude, waive, or diminish any rights of any party under the Amended Plan Term Sheet or the DIP Credit Agreement.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Amended Plan Term Sheet, any DIP Loan Document, or any Prepetition Debt Document, as applicable, shall not impair such rights and obligations.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

### A. Administrative Claims.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of DIP Claims, Professional Fee Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed and due on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by a Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Post-Effective Date Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of this Plan, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors by the applicable Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or their property, and such Administrative Claims shall be deemed Disallowed as of the Effective Date without the need for any objection from the Debtors or the

Post-Effective Date Debtors, as applicable, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**B. DIP Claims.**

All DIP Claims shall be deemed Allowed in an amount equal to the aggregate amount of the DIP Obligations (as defined in the Final DIP Order) outstanding as of the Effective Date; *provided* that the allowance of DIP Claims on account of the DIP Roll-Up Loans (as defined in the Final DIP Order) is subject to paragraph 11 of the Final DIP Order. Except to the extent that the DIP Lender agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Claim, the DIP Lender shall receive payment in full in Cash of the Allowed DIP Claims from the Debtors' Cash on hand, prior to the vesting of the Wind-Down Trust Assets in the Wind-Down Trust. Upon such payment in full in Cash (or such other treatment as the DIP Lender may agree), all Liens and security interests granted to secure the DIP Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**C. Priority Tax Claims.**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**D. Professional Fee Claims.**

**1. Final Fee Applications and Payment of Professional Fee Claims.**

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than sixty (60) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Post-Effective Date Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.

**2. Professional Fee Escrow Account.**

On the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Post-Effective Date Debtors, as applicable. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Post-Effective Date Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee

Escrow Account shall promptly be paid to the Wind-Down Trust without any further notice to, action, order, or approval of the Bankruptcy Court.

**3. Professional Fee Amount.**

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such estimates to the Debtors no later than three (3) Business Days before the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that may be Allowed pursuant to the Professional's final request for payment. If a Professional does not provide an estimate, the Debtors or the Post-Effective Date Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional for the purpose of determining the Professional Fee Amount. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

**4. Post-Confirmation Fees and Expenses.**

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtors or the Post-Effective Date Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the Debtors or the Post-Effective Date Debtors, as applicable. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and/or the Post-Effective Date Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS, EQUITY INTERESTS, AND INTERCOMPANY INTERESTS

### A. Classification of Claims and Interests.

This Plan constitutes a separate Plan for each Debtor. Except for the Claims addressed in Article II of this Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest, or any portion thereof, is classified in a particular Class only to the extent that such Claim or Interest or such portion thereof qualifies within the description of that Class and is classified in other Class(es) to the extent that such Claim or Interest or such portion thereof qualifies within the description of such other Class(es). A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against, and Interests in, the Debtors pursuant to this Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Prepetition Facility Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |

**B. Treatment of Claims and Interests.**

Subject to Article VI of this Plan, each Holder of an Allowed Claim or Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Interest, except to the extent different treatment is agreed to by the Debtors or Post-Effective Date Debtors and the Holder of such Allowed Claim or Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

***1. Class 1 — Other Secured Claims.***

(a) *Classification:* Class 1 consists of all Other Secured Claims.

(b) *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Post-Effective Date Debtor, with the consent of PIF: (i) payment in full in Cash of its Allowed Other Secured Claim; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other

Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting:* Class 1 is Unimpaired under this Plan. Holders of Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

***2. Class 2 — Other Priority Claims.***

(a) *Classification:* Class 2 consists of all Other Priority Claims.

(b) *Treatment:* Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each Holder of such Allowed Other Priority Claim shall receive, at the option of the applicable Debtor or Post-Effective Date Debtor, with the consent of PIF: (i) payment in full in Cash of its Allowed Other Priority Claim; or (ii) such other treatment rendering its Allowed Other Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting:* Class 2 is Unimpaired under this Plan. Holders of Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

***3. Class 3 — Prepetition Facility Claims.***

(a) *Classification:* Class 3 consists of all Prepetition Facility Claims.

(b) *Allowance:* Subject to paragraph 11 of the Final DIP Order, the Prepetition Facility Claims shall be deemed Allowed in the aggregate principal amount of not less than $495,000,000, plus accrued and unpaid interest, fees, expenses, and other amounts arising and payable under and in accordance with the Prepetition Debt Documents; *provided* that such principal amount shall be reduced on a dollar-for-dollar basis by the aggregate principal amount of the Prepetition Facility Claims that, as of the Effective Date, has been deemed exchanged into DIP Roll-Up Loans (as defined in the Final DIP Order) pursuant to the DIP Orders and constitutes DIP Claims.

(c) *Treatment:* Except to the extent that a Holder of an Allowed Prepetition Facility Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Prepetition Facility Claim, each Holder of an Allowed Prepetition Facility Claim shall receive (i) payment in full in Cash of its Allowed Prepetition Facility Claim from the Debtors' Cash on hand, after payment in full in Cash of the Allowed DIP Claims and prior to the vesting of the Wind-Down Trust Assets in the Wind-Down Trust, and (ii) to the extent that its Allowed Prepetition Facility Claim is not paid in full in Cash on the Effective Date, the Wind-Down Trust Units, entitling such Holder to distributions from the Wind-Down Trust in accordance with Article VII.D of this Plan until such Allowed Prepetition Facility Claim has been paid in full.

(d) *Voting:* Class 3 is Impaired under this Plan. Therefore, Holders of Prepetition Facility Claims are entitled to vote to accept or reject this Plan.

***4. Class 4 — General Unsecured Claims.***

(a) *Classification:* Class 4 consists of all General Unsecured Claims, including all Player Claims.

(b) *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date or as soon as reasonably practicable thereafter, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the PIF Cash Consideration.

(c) *Voting:* Class 4 is Impaired under this Plan. Therefore, Holders of General Unsecured Claims are entitled to vote to accept or reject this Plan.

***5. Class 5 — Intercompany Claims.***

(a) *Classification:* Class 5 consists of all Intercompany Claims.

(b) *Treatment:* On the Effective Date, each Allowed Intercompany Claim shall be, at the election of the Post-Effective Date Debtors, with the consent of PIF, cancelled, released, Reinstated, contributed, or distributed, in each case as necessary to implement the Wind-Down. No distributions shall be made on account of any Intercompany Claims.

(c) *Voting:* Class 5 is Impaired under this Plan. Holders of Intercompany Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

***6. Class 6 — Section 510(b) Claims.***

(a) *Classification:* Class 6 consists of all Section 510(b) Claims.

(b) *Treatment:* On the Effective Date, all Section 510(b) Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of Section 510(b) Claims shall not receive or retain any distribution, property, or other value on account of such Section 510(b) Claims.

(c) *Voting:* Class 6 is Impaired under this Plan. Holders of Section 510(b) Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

***7. Class 7 — Existing Equity Interests.***

(a) *Classification:* Class 7 consists of all Existing Equity Interests.

(b) *Treatment:* On the Effective Date, all Existing Equity Interests shall be cancelled, released, and extinguished, and Holders of Existing Equity Interests shall not receive or retain any distribution, property, or other value on account of such Existing Equity Interests; *provided* that

PIF shall receive the releases provided in Article IX of this Plan, subject in all respects to the conclusion of the Investigation and the recommendation of the Special Committee.

(c) *Voting:* Class 7 is Impaired under this Plan. Holders of Existing Equity Interests are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

***8. Class 8 — Intercompany Interests.***

(a) *Classification:* Class 8 consists of all Intercompany Interests.

(b) *Treatment:* On the Effective Date, Intercompany Interests shall be, at the election of the Post-Effective Date Debtors, with the consent of PIF, either Reinstated or cancelled, released, and extinguished without any distribution on account of such Intercompany Interests.

(c) *Voting:* Holders of Intercompany Interests are either Unimpaired and conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

## C. Special Provision Governing Unimpaired Claims.

Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors or the Post-Effective Date Debtors, as applicable, regarding any Unimpaired Claims, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## D. Elimination of Vacant Classes.

Any Class of Claims or Interests that does not have an Allowed Claim, Interest, or Intercompany Interest or a Claim, Interest, or Intercompany Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E. Voting Classes, Presumed Acceptance by Non-Voting Classes.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject this Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted this Plan.

## F. Intercompany Interests.

For the avoidance of doubt, unless otherwise specified pursuant to the Wind-Down, to the extent Reinstated pursuant to this Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Post-Effective Date Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

### G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by one or more of the Classes entitled to vote pursuant to Article III.B of this Plan. The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify this Plan in accordance with Article XI of this Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

### H. Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### I. Subordinated Claims.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Post-Effective Date Debtors reserve the right to re-classify any Allowed Claim, Intercompany Interest, and Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A. General Settlement of Claims, Interests, and Intercompany Interests.

To the greatest extent permissible under the Bankruptcy Code and the Bankruptcy Rules, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Intercompany Interests, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to this Plan. This Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Intercompany Interests, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and Holders of Claims and Interests. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Interests, as applicable, in any Class are intended to be and shall be final.

Certain Claims and Causes of Action may exist between one or more of the Debtors and one or more of its Affiliates, which Claims and Causes of Action (other than any such Claims and Causes of Action that are not released pursuant to Article IX.C, including any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity) have been settled, and such settlement is reflected in the treatment of the Intercompany Claims, Intercompany Interests, and the Claims against, and Interests in, each Debtor. This Plan shall be deemed a motion to approve the good faith compromise and settlement of such Claims and Causes of Action pursuant to Bankruptcy Rule 9019.

**B. Wind-Down.**

On the Effective Date, the Debtors shall implement the Wind-Down in accordance with this Article IV.B, Article VII of this Plan, and the Wind-Down Transactions Memorandum, including the establishment of the Wind-Down Trust and the vesting of the Wind-Down Trust Assets in the Wind-Down Trust, and shall take all actions necessary or appropriate to effectuate the Wind-Down, the resolution of Claims, and the distributions provided for in this Plan.

Before, on, and after the Effective Date, the Debtors or the Post-Effective Date Debtors shall consummate the Wind-Down and may take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan that are consistent with and pursuant to the terms and conditions of this Plan, including, as applicable: (i) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of this Plan and the other Definitive Documents; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan, and the other Definitive Documents; (iii) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state Law; (iv) such other transactions that, in the reasonable business judgment of the Debtors or the Post-Effective Date Debtors, as applicable, are required to effectuate the Wind-Down; and (v) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

On the Effective Date: (a) the Wind-Down Trust shall be established for the benefit of the Wind-Down Trust Beneficiaries; (b) the Wind-Down Trust Assets shall be vested in the Wind-Down Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests; (c) the Wind-Down Trustee shall be appointed; (d) the Wind-Down Trustee shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, the Confirmation Order, and the Wind-Down Trust Agreement through the conclusion of the Wind-Down, including (i) claims reconciliation, (ii) distributions on account of Allowed Claims against the Debtors under this Plan, (iii) the pursuit of any Retained Causes of Action, and (iv) the winding down of the Debtors, including the disposition of tax assets and the filing of tax returns; (e) with respect to the foregoing duties, the Wind-Down Trustee shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work-product doctrine, or any other privilege, and shall succeed to all of the Debtors' rights to preserve,

assert, or waive any such privilege; (f) the Wind-Down Trustee shall act for the Debtors in the same fiduciary capacity as applicable to a company's board of directors and officers, and all certificates of formation, membership agreements, and related documents are deemed amended by this Plan to permit and authorize the same; (g) the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have terminated, such persons shall be deemed to have resigned and shall be discharged of any and all authority, duties, responsibilities, and obligations relating to, arising from, and in connection with their service in such capacities, in each case as of the Effective Date, and the Wind-Down Trustee shall be appointed as the sole director and sole officer of the Debtors and shall succeed to the powers of the Debtors' directors and officers; (h) the Wind-Down Trustee shall be the sole representative of, and shall act for, the Debtors and their Estates; (i) the Wind-Down Trustee may engage professionals and consultants as it deems necessary and appropriate for the purpose of carrying out its duties; and (j) the Wind-Down Trustee shall use commercially reasonable efforts to operate in a manner consistent with the Wind-Down Budget.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, the Debtors and the Wind-Down Trustee, as applicable, to take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan.

**C. Director and Officer Liability Insurance.**

After the Effective Date, the Post-Effective Date Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy in effect or purchased as of or following the Petition Date (including any tail policy), and any members, managers, directors, and officers of the Debtors who served in such capacity at any time before the Effective Date and any other individuals, in each case, covered by such existing insurance policies, shall be entitled to the full benefits of such policy, to the extent of the terms and limitations of such policy, for the full term of such policy regardless of whether such members, managers, directors, officers, or other individuals remain in such positions after the Effective Date.

Notwithstanding anything herein to the contrary, the Debtors or Post-Effective Date Debtors, as applicable, shall retain the ability to supplement such D&O Liability Insurance Policies as the Debtors or Post-Effective Date Debtors deem necessary, including by purchasing any tail coverage (including a tail policy).

**D. Cancellation of Notes, Instruments, Certificates, and Other Documents.**

Except for the purpose of evidencing a right to a distribution under this Plan, on the Effective Date, except as otherwise specifically provided for in this Plan or the Plan Supplement: (1) the obligations of any Debtor under all certificates, shares, notes, bonds, indentures, purchase rights, or other instruments or documents, directly or indirectly evidencing or creating any indebtedness or obligations of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim, Interest, or Intercompany Interest shall be cancelled and deemed surrendered to the Debtors without any need for a Holder to take further action with respect thereto, and the Debtors shall not have any

continuing obligations thereunder and Holders of or parties to such cancelled instruments, certificates, and other documentation will have no rights arising from or relating to such instruments, certificates, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order; *provided* that nothing in this Article IV.D shall impair the right of any Holder of or party to any such instrument, certificate, or other documentation to assert any defense, offset, or counterclaim against any Entity other than the Debtors, the Post-Effective Date Debtors, and the Released Parties; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, compromised and discharged.

Notwithstanding the foregoing or anything to the contrary herein or in the Confirmation Order, the Prepetition Debt Documents shall continue in effect solely for the purposes of: (a) allowing Holders of Prepetition Facility Claims to (i) receive and accept distributions under the Plan on account of such Claims, and (ii) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including to enforce any obligation under this Plan or the Confirmation Order owed to Holders of such Claims; (b) allowing and preserving the rights of PIF to maintain, enforce, and exercise any right to compensation, indemnification, expense reimbursement, priority of payment, immunity, exculpation, contribution, or any other claim or entitlement that PIF may have under the Prepetition Debt Documents; *provided* that, subject to the terms of this Plan, any such indemnification or contribution rights under the Prepetition Debt Documents shall be limited to rights with respect to Persons other than the Debtors; and (c) in each case, allowing Holders of Prepetition Facility Claims to perform any functions that are necessary to effectuate the foregoing.

**E. Section 1146 Exemption.**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Post-Effective Date Debtor, as applicable, or to any other Person) of property under this Plan or pursuant to: (i) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Post-Effective Date Debtors, as applicable, or of the Wind-Down Trust Units; (ii) the Wind-Down; (iii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iv) the making, assignment, or recording of any lease or sublease; or (v) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or

governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## F. Corporate Action; Effectuating Documents; Preservation of Causes of Action.

### *1. Corporate Action.*

Upon the Effective Date, all actions contemplated under this Plan shall be deemed authorized and approved in all respects, including: (i) the execution of the Wind-Down Trust Agreement and the establishment of the Wind-Down Trust; (ii) the appointment of the Wind-Down Trustee; (iii) the vesting of the Wind-Down Trust Assets in the Wind-Down Trust; (iv) the funding of the Wind-Down Amount; and (v) all other actions contemplated under this Plan (whether to occur before, on, or after the Effective Date). All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with this Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Wind-Down Trustee, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Debtors. The authorizations and approvals contemplated by this Article IV.F.1 shall be effective notwithstanding any requirements under non-bankruptcy law.

### *2. Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Post-Effective Date Debtors, and the officers and members of the boards of directors or managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the Wind-Down Trust Units in the name of and on behalf of the Post-Effective Date Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to this Plan or the Amended Plan Term Sheet.

### *3. [Reserved.]*

### *4. Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX of this Plan, all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Wind-Down Trust on the Effective Date, and the Wind-Down Trustee, on behalf of the Wind-Down Trust, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all such Causes of Action, and the Wind-Down Trustee's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective

Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in this Plan, including in Article IX of this Plan. The Wind-Down Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Trust Beneficiaries. No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Post-Effective Date Debtors, or the Wind-Down Trustee will not pursue any and all available Causes of Action against it. The Debtors, the Post-Effective Date Debtors, and the Wind-Down Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, including Article IX of this Plan. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Final Order, the Wind-Down Trustee expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption and Rejection of Executory Contracts and Unexpired Leases.

On the Effective Date, except as otherwise provided herein, all Executory Contracts and Unexpired Leases that are not otherwise assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor or the Wind-Down Trustee, as applicable, pursuant to sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (d) are the subject of a motion to assume that is pending on the Effective Date; (e) have an ordered or requested effective date of rejection that is after the Effective Date; or (f) are Insurance Policies (which shall be treated in accordance with Article V.E).

Notwithstanding anything to the contrary in this Plan, the Debtors and the Post-Effective Date Debtors, as applicable, reserve the right to alter, amend, modify, or supplement, as applicable, the Assumed Executory Contracts and Unexpired Leases Schedule to add or remove any Executory Contract or Unexpired Lease to or from the Assumed Executory Contracts and Unexpired Leases Schedule at any time prior to the Effective Date; any such modification shall be deemed to effect the assumption or rejection, as applicable, of such Executory Contract or Unexpired Lease as of the date specified in the notice. The Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases Schedule to the counterparties to the Executory Contracts or Unexpired Leases affected thereby.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements of Executory Contracts and Unexpired Leases executed during the

Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

Except as set forth in Article IV.D, to the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

**B. Indemnification Obligations.**

Consistent with applicable law, all Indemnification Obligations shall continue on terms no less favorable to such officers, directors, individual managers, members, partners, supervisors, agents, or employees than the Indemnification Obligations in place on the Petition Date; *provided* that the Debtors shall not indemnify such officers, directors, individual managers, members, partners, supervisors, agents, or employees of the Debtors for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtors' organizational documents, or applicable agreements governing the Indemnification Obligations. All Indemnification Obligations shall continue as obligations of the Post-Effective Date Debtors. Any Claim based on the Debtors' obligations thereunder shall be an Allowed Claim. For the avoidance of doubt, this section shall not apply to any obligations as to any sponsor or other equity owner of any of the Debtors in its capacity as such, but this section shall only apply to any representatives or appointees of such sponsor or other equity owner if they are the Debtors' current or former officers, directors, individual managers, members, partners, supervisors, agents, or employees, in each case in their capacities as such.

For the avoidance of doubt, nothing herein shall expand any of the Debtors' Indemnification Obligations in place as of the Petition Date.

**C. Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Counterparties to Executory Contracts or Unexpired Leases deemed rejected shall be served with a notice of rejection of their Executory Contracts and Unexpired Leases via service of the Confirmation Order and the Plan Supplement. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court on or before the later of (i) the applicable bar date and (ii) any date the Bankruptcy Court may fix in the applicable order authorizing such rejection (including the Confirmation Order) and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, unless otherwise ordered by the Bankruptcy Court.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease with respect to which a Proof of Claim is not Filed with the Bankruptcy Court within such time will be automatically Disallowed and forever barred from assertion and shall not be enforceable against

the Debtors, the Post-Effective Date Debtors, the Estates, or their property without the need for any objection by the Debtors or the Post-Effective Date Debtors, as applicable, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged and shall be subject to the permanent injunction set forth in Article IX.F of this Plan, notwithstanding anything in a Proof of Claim to the contrary.

All Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim as set forth in Article III.B of this Plan and may be objected to in accordance with the provisions of Article VIII of this Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**D. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Solely to the extent that any Executory Contracts or Unexpired Leases are assumed pursuant to this Plan, the Post-Effective Date Debtors shall pay all Cures, if any, on the Effective Date. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to a proposed assumption, including pursuant to this Plan, or related Cure amount must be Filed, served, and actually received by counsel to the Debtors and the U.S. Trustee no later than thirty (30) days after the Effective Date or any other deadline that may be set by the Bankruptcy Court. Any such objection that is not timely Filed shall be deemed waived and forever barred, estopped, and enjoined from assertion, and the counterparty shall be deemed to have consented to the proposed assumption and the applicable Cure amount, without the need for any objection by the Post-Effective Date Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Post-Effective Date Debtors, as applicable, of the Cure; *provided* that nothing herein shall prevent the Post-Effective Date Debtors from paying any Cure despite the failure of the relevant counterparty to timely object to the proposed Cure. The Post-Effective Date Debtors may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or the Post-Effective Date Debtors', as applicable, first scheduled omnibus hearing, or such other setting as requested by the Debtors or the Post-Effective Date Debtors, as applicable, with respect to which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Post-Effective Date Debtors, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Post-Effective Date Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise and full payment of any applicable Cure pursuant to this Article V.D shall result in the

full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, shall be deemed Disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

**E. Insurance Policies.**

Notwithstanding anything to the contrary in the Definitive Documents, any bar date order or notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be peremptory or supervening, grants an injunction, discharge or release, purports to limit or impact a setoff or recoupment right, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

(a) on the Effective Date, the Post-Effective Date Debtors shall be deemed to have assumed all Insurance Policies that (i) are listed on the Assumed Executory Contracts and Unexpired Leases Schedule prior to the Confirmation Hearing, (ii) are D&O Liability Insurance Policies, or (iii) identify one or more of the Debtors as first named insured or counterparty thereto pursuant to sections 105 and 365 of the Bankruptcy Code;

(b) on and after the Effective Date, the Post-Effective Date Debtors shall remain liable in full for all of their and the Debtors' obligations under the Insurance Policies, regardless of whether any such obligations arise or become due before, on, or after the Effective Date, without the need or requirement for Insurers to file or serve any objection to a notice of proposed Cure amount (or lack of such notice) or file or serve a request, motion, or application for payment of such obligations, or Proof of Claim, Cure amount, or Administrative Claim;

(c) nothing (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any Insurance Policy; or (ii) alters or modifies the duty, if any, of the Insurers to pay claims covered by such Insurance Policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Post-Effective Date Debtors) or draw on any collateral or security therefor; and

(d) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article IX of this Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against Insurers under applicable non-bankruptcy law to proceed with their claims; (II) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against an Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article IX of this Plan to proceed with its

claim, and (C) all costs in relation to each of the foregoing; (III) Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Post-Effective Date Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Post-Effective Date Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Post-Effective Date Debtors, as applicable) under the Insurance Policies, in such order as the applicable Insurer may determine; and (IV) Insurers to cancel any Insurance Policy, and take other actions relating to the Insurance Policies (including effectuating a setoff or recoupment) to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Policies.

**F. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.**

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Post-Effective Date Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

**G. [Reserved.]**

**H. Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**I. Reservation of Rights.**

Nothing contained in this Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or the Post-Effective Date Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Effective Date Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under this Plan.

**J. Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**K. Contracts and Leases Entered Into After the Petition Date.**

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtors or the Post-Effective Date Debtors liable thereunder in the ordinary course of the Wind-Down, to the extent applicable. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A. Timing and Calculation of Amounts to Be Distributed.**

Unless otherwise provided in this Plan, on the Effective Date (or, if a Claim, Interest, or Intercompany Interest is not an Allowed Claim, Interest, or Intercompany Interest on the Effective Date, on the date that such Claim, Interest, or Intercompany Interest becomes an Allowed Claim, Interest, or Intercompany Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, Interest, or Intercompany Interest, shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Interests (as applicable) in the applicable Class. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII hereof. Except as otherwise provided in this Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B. Disbursing Agent.**

All distributions under this Plan shall be made by the Disbursing Agent on the Effective Date or at such other time as provided for in this Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtors.

**C. Rights and Powers of Disbursing Agent.**

**1. Powers of the Disbursing Agent.**

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**2. Expenses Incurred on or After the Effective Date.**

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Post-Effective Date Debtors.

**D. Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

**1. Record Date for Distribution.**

On the Distribution Record Date, (i) the Claims Register and (ii) the loan register maintained by PIF shall each be deemed closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register or such loan register as of the close of business on the Distribution Record Date.

**2. Delivery of Distributions in General.**

Except as otherwise provided in this Plan, the Disbursing Agent shall make distributions to Holders of Allowed Claims or Interests as of the Distribution Record Date, or, if applicable, to such Holder's designee, as appropriate: (a) at the address for each such Holder as indicated on the Debtors' records as of the Distribution Record Date; (b) to the signatory set forth on any Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have not been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Post-Effective Date Debtors or the applicable Disbursing Agent after the date of any related Proof of Claim; or (d) to any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf; *provided* that the manner of such distributions shall be determined at the discretion of the Post-Effective Date Debtors. Subject to this Article VI and Article IV.D, distributions under this Plan on account of Allowed Claims or Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim, Interest, or Intercompany Interest shall have and receive the benefit of the distributions in the manner set forth in this Plan. The Debtors, the Post-Effective Date Debtors, the Disbursing Agent, and PIF, as applicable, shall not incur any liability whatsoever on account of any distributions under this Plan except for fraud, gross negligence, or willful misconduct.

**3. Minimum Distributions.**

No fractional Wind-Down Trust Units shall be distributed. When any distribution pursuant to this Plan on account of an Allowed Claim would otherwise result in the issuance of a number

of Wind-Down Trust Units that is not a whole number, the actual distribution of such Wind-Down Trust Units shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number; and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of Wind-Down Trust Units to be distributed under this Plan shall be adjusted as necessary to account for the foregoing rounding.

Holders of Allowed Claims entitled to distributions of $50 (whether Cash or otherwise) or less in aggregate shall not receive distributions, and each such Claim shall be deemed Disallowed and its Holder is forever barred from asserting that Claim against the Debtors or the Post-Effective Date Debtors, as applicable, or their property.

**4. Undeliverable Distributions and Unclaimed Property.**

In the event that any distribution to any Holder of Allowed Claims or Interests, as applicable, is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the distribution date. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheatment, abandoned property, or unclaimed property Laws to the contrary), and the Claim, Interest, or Intercompany Interest of any Holder related to such property or interest in property shall be deemed Disallowed and forever barred. The Post-Effective Date Debtors and the Disbursing Agent shall have no obligation to attempt to locate a Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

**5. Surrender of Canceled Instruments or Securities.**

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim, Interest, or Intercompany Interest that has been cancelled in accordance with Article IV.D hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim, Interest, or Intercompany Interest, which shall continue in effect for purposes of allowing holders to receive distributions under this Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Reinstated under this Plan.

**E. Manner of Payment.**

Any distributions of Cash to the Holders of the applicable Allowed Claims under this Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Post-Effective Date Debtor. At the option of the Disbursing Agent, any Cash payment to be made hereunder may be

made by check or wire transfer or as otherwise required or provided by other applicable agreements.

**F. Compliance with Tax Requirements.**

In connection with this Plan, to the extent applicable, any applicable withholding or reporting agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. The applicable withholding and reporting agents under this Plan include the Debtors, the Post-Effective Date Debtors, the Wind-Down Trustee (on behalf of the Wind-Down Trust), and the Disbursing Agent. Notwithstanding any provision in this Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. Any applicable withholding or reporting agent may satisfy any withholding obligation arising in respect of a Holder (including in respect of the deemed distribution of Wind-Down Trust Units on the Effective Date or any income of the Wind-Down Trust allocable to such Holder, whether or not distributed) by withholding from any Cash or other property otherwise distributable to such Holder under this Plan, including such Holder's share of the PIF Cash Consideration and any subsequent distribution from the Wind-Down Trust. All amounts properly withheld and paid over to the appropriate Governmental Unit shall be treated for all purposes of this Plan as having been distributed to the applicable Holder. Each Holder of an Allowed Claim that is to receive a distribution under this Plan shall, as a condition to receiving any distribution under this Plan, provide the applicable withholding or reporting agent with a properly completed IRS Form W-9 or appropriate IRS Form W-8, as applicable, and such other information as such agent may reasonably request. Any Holder that fails to provide such information within 180 days after a written request therefor shall be deemed to have forfeited its right to such distribution, which shall revert to the Wind-Down Trust, free of any Claim or Interest of such Holder. The Debtors and the Post-Effective Date Debtors reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**G. Allocations.**

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest. Distributions in respect of Allowed Player Claims and other Allowed Claims for compensation for services or for the use of name, image, and likeness rights shall be allocated among the components of such Claims as reasonably determined by the Debtors or the Post-Effective Date Debtors for U.S. federal income tax reporting and withholding purposes.

### H. No Postpetition Interest on Claims.

Unless otherwise specifically provided for in this Plan, the DIP Orders, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

### I. Foreign Currency Exchange Rate.

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal (National Edition), on the Effective Date.

### J. Setoffs and Recoupment.

Except as expressly provided in this Plan, each Post-Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment (other than for the DIP Claims held by the DIP Lender) is either (i) agreed in amount among the relevant Post-Effective Date Debtor(s) and Holder of the Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor or its successor of any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against or Interests in one or more of the Debtors be entitled to recoup any such Claim, Interest, or Intercompany Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, unless such Holder has provided notice of such recoupment in writing to the Debtors in accordance with Article XIII.G of this Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### K. Claims Paid or Payable by Third Parties.

#### 1. Claims Paid by Third Parties.

The Debtors or the Post-Effective Date Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Post-Effective Date Debtor, as applicable. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Post-Effective Date Debtor, as applicable, on account

of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Post-Effective Date Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Post-Effective Date Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14)-day grace period specified above until the amount is fully repaid.

**2. Claims Payable by Third Parties.**

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' satisfaction, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**3. Applicability of Insurance Policies.**

Except as otherwise provided in this Plan, payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Notwithstanding anything to the contrary contained herein (including Article III), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

## ARTICLE VII.
## THE WIND-DOWN TRUST

### A. Establishment of the Wind-Down Trust.

On the Effective Date, the Debtors shall execute the Wind-Down Trust Agreement and shall take all other steps necessary to establish the Wind-Down Trust in accordance with this Plan and the Wind-Down Trust Agreement, and the Wind-Down Trust Assets shall vest in the Wind-Down Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided in this Plan. The Wind-Down Trust Units shall be issued by the Wind-Down Trust and distributed on the Effective Date or as soon as reasonably practicable after the Effective Date to Holders of Allowed Claims in accordance with Article III.B and Article VI of this Plan and the Wind-Down Trust Agreement, and the issuance of the Wind-Down Trust Units is authorized and approved without the need for further action by the Bankruptcy Court or any other Person.

**B. The Wind-Down Trustee.**

The Wind-Down Trustee shall be appointed on the Effective Date and shall have the rights, powers, and duties set forth in Article IV.B of this Plan and the Wind-Down Trust Agreement, including claims reconciliation, distributions on account of Allowed Claims, the pursuit of the Retained Causes of Action, and the winding down of the Debtors, and shall serve as the sole director and officer, and the sole representative, of the Debtors from and after the Effective Date.

**C. Wind-Down Budget; Costs of Administration.**

The Wind-Down Trustee shall use commercially reasonable efforts to administer the Wind-Down Trust in a manner consistent with the Wind-Down Budget. The costs and expenses of the Wind-Down Trust, including the reasonable fees and expenses of the Wind-Down Trustee and the professionals and consultants it engages and the costs of tax compliance, withholding, and information reporting, shall be paid from the Wind-Down Amount and, to the extent necessary, the other Wind-Down Trust Assets, in accordance with the Wind-Down Budget, without further order of the Bankruptcy Court. Except for the PIF Cash Consideration, nothing in this Plan requires or shall be deemed to require PIF to fund the Wind-Down Amount, the Wind-Down Budget, or the Wind-Down Trust, or otherwise to extend funds, beyond the aggregate amounts provided under the DIP Facility, as set forth in the DIP Credit Agreement and the DIP Orders.

**D. Distributions from the Wind-Down Trust.**

The Wind-Down Trustee shall make distributions to the Wind-Down Trust Beneficiaries of the net proceeds of the Wind-Down Trust Assets in accordance with Article III and Article VI of this Plan, this Article VII.D, and the Wind-Down Trust Agreement.

The net proceeds of the Wind-Down Trust Assets (after payment of or reserve for the costs, fees, and expenses of the Wind-Down in accordance with the Wind-Down Budget and Article VII.C of this Plan) shall be distributed by the Wind-Down Trustee to the Holders of Wind-Down Trust Units until the Allowed Prepetition Facility Claims have been paid in full.

**E. Tax Treatment; Dissolution.**

The Wind-Down Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) and as a grantor trust for U.S. federal income tax purposes, with the Wind-Down Trust Beneficiaries treated as the grantors and owners thereof. For all U.S. federal income tax purposes, the transfer of the Wind-Down Trust Assets (other than any Wind-Down Trust Assets allocable to Disputed Claims) to the Wind-Down Trust shall be treated as a transfer of such assets by the Debtors to the Wind-Down Trust Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of such assets by the Wind-Down Trust Beneficiaries to the Wind-Down Trust in exchange for the Wind-Down Trust Units. The Wind-Down Trustee shall determine the fair market value of the Wind-Down Trust Assets as of the Effective Date and shall notify the Wind-Down Trust Beneficiaries of such determination, and the Debtors, the Wind-Down Trust, and the Wind-Down Trust Beneficiaries shall use such values consistently for all U.S. federal income tax purposes. Taxable income of the Wind-Down Trust (other than taxable income allocable to any reserve for Disputed Claims treated as a "disputed ownership fund") shall be allocated among the Wind-Down Trust Beneficiaries by reference to the manner in which an

amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Wind-Down Trust had distributed all of its assets (valued at their tax book value) to the Wind-Down Trust Beneficiaries in accordance with the priorities set forth in this Plan, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Wind-Down Trust, and taxable loss of the Wind-Down Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Wind-Down Trust Assets. The tax book value of the Wind-Down Trust Assets shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code of 1986, as amended, the Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. The Wind-Down Trustee shall file all tax returns of the Debtors and the Wind-Down Trust, including returns for the Wind-Down Trust consistent with Treasury Regulations section 1.671-4(a), shall, to the extent permitted by applicable law, treat any reserve for Disputed Claims as a "disputed ownership fund" within the meaning of Treasury Regulations section 1.468B-9 (and any taxes imposed on such reserve shall be paid from the assets of such reserve), and may withhold and pay over any amount required to be withheld under applicable law, including in respect of income of the Wind-Down Trust allocable to a Wind-Down Trust Beneficiary (whether or not distributed), in accordance with Article VI.F of this Plan. The Wind-Down Trust shall terminate no later than five (5) years after the Effective Date, subject to extension with the approval of the Bankruptcy Court obtained within six (6) months before the beginning of each extended term. Upon the completion of the Wind-Down, the Wind-Down Trustee shall be authorized to dissolve the Debtors and the Wind-Down Trust without further order of the Bankruptcy Court.

The Post-Effective Date Debtors shall continue in existence after the Effective Date solely for the purpose of implementing the Wind-Down in accordance with this Plan and the Wind-Down Trust Agreement, and for no other purpose. Upon the completion of the Wind-Down, the Wind-Down Trustee shall dissolve each of the Debtors in accordance with this Article VII.E.

Upon (a) the Filing with the Bankruptcy Court by the Wind-Down Trustee of a certification that all distributions under this Plan and the Wind-Down Trust Agreement have been made and that the Wind-Down Trustee has completed all of its duties under this Plan and (b) entry of a final decree closing the last of the Chapter 11 Cases (the date on which both of the foregoing have occurred, the "Dissolution Date"), any Post-Effective Date Debtor not dissolved or merged out of existence as of such time shall be deemed to be dissolved without any further action by the Wind-Down Trustee, including the filing of any documents with the secretary of state for the state in which such Debtor is formed or any other jurisdiction; provided that the Wind-Down Trustee shall retain the authority to take all necessary actions to cause the dissolution of, or to merge out of existence, any Post-Effective Date Debtor in, and to withdraw any Post-Effective Date Debtor from, applicable jurisdictions to the extent required by applicable law or deemed desirable by the Wind-Down Trustee, consistent with the Wind-Down Transactions Memorandum.

## F. Securities Law Matters.

The Wind-Down Trust Units are not intended to constitute "securities" and shall be uncertificated and shall not be transferable or assignable except by will, intestate succession or operation of law. Any purported transfer or assignment in violation of the Wind-Down Trust

Agreement shall be null and void. The Wind-Down Trust Units shall not be listed on any securities exchange or quoted on any quotation system, and neither the Wind-Down Trustee nor any other Person shall take any action to facilitate or encourage trading in the Wind-Down Trust Units. The Wind-Down Trustee shall maintain a register of the Holders of the Wind-Down Trust Units and their respective holdings, and ownership of the Wind-Down Trust Units shall be reflected solely on such register. To the extent the Wind-Down Trust Units are deemed to be "securities," the issuance of the Wind-Down Trust Units under this Plan shall be exempt, pursuant to section 1145(a)(1) of the Bankruptcy Code (or, to the extent such section is unavailable, pursuant to any other available exemption), from registration under the Securities Act and any applicable state or local Blue-Sky Laws. The Wind-Down Trust shall be established solely for the purpose of liquidating and distributing the Wind-Down Trust Assets in accordance with this Plan and the Wind-Down Trust Agreement, with no objective to continue or engage in the conduct of a trade or business. The Wind-Down Trust is not intended to be, and is not expected to be required to register as, an "investment company" under the Investment Company Act of 1940, as amended, or to register the Wind-Down Trust Units under the Exchange Act; provided that if the Wind-Down Trustee determines that any such registration is required, the Wind-Down Trustee is authorized to take such actions as are necessary to comply with such requirements or to obtain relief therefrom. The Wind-Down Trustee shall furnish to the Holders of Wind-Down Trust Units, not less frequently than monthly, a report regarding the Wind-Down Trust Assets, receipts, and distributions, together with such tax information as is required by applicable law, in each case as provided in the Wind-Down Trust Agreement. The Wind-Down Trustee is authorized, but shall not be required, to take such actions (including seeking no-action, interpretive, or exemptive relief) as the Wind-Down Trustee determines in good faith, after consultation with counsel, to be necessary or advisable to comply with applicable securities laws, and the costs thereof shall be paid as costs of the Wind-Down in accordance with the Wind-Down Budget.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A. Disputed Claims Process.

The Debtors or the Post-Effective Date Debtors, as applicable, shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is Filed is Allowed and (ii) File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. Except as otherwise provided herein, all Proofs of Claim Filed after the applicable claims bar date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Post-Effective Date Debtor, as applicable, without the need for any objection by the Debtor or Post-Effective Date Debtor, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.

If the Debtors or the Post-Effective Date Debtors, as applicable, dispute any Impaired Claim that is not Allowed as of the Effective Date pursuant to Article III.B or a Final Order entered by the Bankruptcy Court (which may include the Confirmation Order), the Debtors or the Post-Effective Date Debtors, as applicable, shall file an objection with, and the dispute shall be determined, resolved, or adjudicated before, the Bankruptcy Court.

## B. Allowance of Claims.

After the Effective Date and subject to the terms of this Plan, each of the Post-Effective Date Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim, Interest, or Intercompany Interest immediately prior to the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by this Plan or a Final Order is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

## C. Estimation of Claims and Interests.

Before or after the Effective Date, the Debtors or the Post-Effective Date Debtors, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim, Interest, or Intercompany Interest that is contingent or unliquidated pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any party previously has objected to such Disputed Claim, Interest, or Intercompany Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim, Interest, or Intercompany Interest, including during the litigation of any objection to any Disputed Claim, Interest, or Intercompany Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision otherwise in this Plan, a Disputed Claim, Interest, or Intercompany Interest that has been expunged from the Claims Register but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, Interest, or Intercompany Interest, that estimated amount shall constitute a maximum limitation on such Claim, Interest, or Intercompany Interest for all purposes under this Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Debtors or the Post-Effective Date Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Disputed Claim, Interest, or Intercompany Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Disputed Claim, Interest, or Intercompany Interest is estimated.

**D. Claims Administration Responsibilities.**

Except as otherwise specifically provided in this Plan, after the Effective Date, the Post-Effective Date Debtors shall have the sole authority to: (i) File, withdraw, or litigate to judgment, objections to Claims, Interests, or Intercompany Interests; (ii) settle or compromise any Disputed Claim, Interest, or Intercompany Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Post-Effective Date Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, Interest, or Intercompany Interest, including the Causes of Action retained pursuant to this Plan.

**E. Time to File Objections to Claims.**

Any objections to Claims shall be Filed on or before the applicable Claims Objection Deadline, as such deadline may be extended from time to time.

**F. Adjustment to Claims or Interests without Objection.**

Any duplicate Claim, Interest, or Intercompany Interest or any Claim, Interest, or Intercompany Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Post-Effective Date Debtors without the Post-Effective Date Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim, Interest, or Intercompany Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

**G. Disputed and Contingent Claims Reserve.**

On or after the Effective Date, the Post-Effective Date Debtors may establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the Post-Effective Date Debtors consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim. Following the final resolution of all Disputed Claims, any residual amounts in such reserve(s) shall constitute residual Cash and be immediately distributed to the Wind-Down Trust.

**H. Disallowance of Claims.**

All Claims of any Entity from which property is sought by the Debtors or the Post-Effective Date Debtors, as applicable, under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Post-Effective Date Debtors, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be Disallowed pursuant to section 502(d) of the Bankruptcy Code if: (1) the Entity, on the one hand, and the Debtors or the Post-Effective Date Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections

of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

Except as provided herein or otherwise agreed to by the Post-Effective Date Debtors in their sole discretion, any and all Proofs of Claim Filed after the applicable bar date shall be deemed Disallowed as of the Effective Date without further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claims have been deemed timely Filed by a Final Order.

### I. Amendments to Proofs of Claim.

On or after the Effective Date, a Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Post-Effective Date Debtors and any such new or amended Proof of Claim Filed that is not authorized before it is Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court absent prior Bankruptcy Court approval or agreement by the Post-Effective Date Debtors; *provided* that the foregoing shall not apply to Administrative Claims or claims Filed by Governmental Units.

### J. Distributions Pending Allowance.

Notwithstanding any other provision of this Plan, if any portion of a Claim, Interest, or Intercompany Interest is Disputed, no payment or distribution provided under this Plan shall be made on account of such Claim, Interest, or Intercompany Interest unless and until such Disputed Claim, Interest, or Intercompany Interest becomes an Allowed Claim, Interest, or Intercompany Interest.

### K. Distributions After Allowance.

To the extent that a Disputed Claim, Interest, or Intercompany Interest ultimately becomes an Allowed Claim, Interest, or Intercompany Interest, distributions (if any) shall be made to the Holder of such Allowed Claim, Interest, or Intercompany Interest in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Allowed Claim, Interest, or Intercompany Interest the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim, Interest, or Intercompany Interest unless required under applicable bankruptcy law.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A. No Discharge; Termination of Interests and Intercompany Interests.

Confirmation of this Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because this Plan provides for the orderly wind-down of the Debtors. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the

occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan shall bind all parties in interest, including every Holder of a Claim against or Interest in any Debtor, and inure to the benefit of, and be binding on, such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under this Plan and whether such Holder has accepted this Plan. On the Effective Date, all Interests and Intercompany Interests shall be treated as provided in Article III of this Plan. Notwithstanding anything in section 1141(d)(3) of the Bankruptcy Code to the contrary, all Persons or Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Post-Effective Date Debtors, or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in this Plan, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Wind-Down Trust Assets and the other assets of the Debtors in the manner contemplated by this Plan. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests, subject to the occurrence of the Effective Date.

## B. Release of Liens.

Except as otherwise specifically provided in this Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim or any related claim that may be asserted against a non-Debtor Affiliate, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates or the Wind-Down Trust Assets shall be fully released and discharged, and all of the right, benefit, title, and interest of any Holder (and the applicable agents of such Holder) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert and, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the Post-Effective Date Debtors and their successors and assigns. The Holders of such Secured Claim or claim against a non-Debtor Affiliate (and the applicable agents for such Holders) shall be authorized and directed, at the sole cost and expense of the Post-Effective Date Debtors, to release any collateral or other property of any Debtor or non-Debtor Affiliate (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Debtors or Post-Effective Date Debtors, as applicable, to evidence the release of such Liens, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## C. Releases by the Debtors.

Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is deemed hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Debtors, their Estates, and the Post-Effective Date Debtors

in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims asserted or assertable on behalf of the Debtors, their Estates, and the Post-Effective Date Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that the Debtors or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim against, or Interest or Intercompany Interest in, a Debtor or other Entity, or that any Holder of any Claim against or Interest or Intercompany Interest in a Debtor or other Entity could have asserted on behalf of the Debtors based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the purchase, sale, or rescission of any Security of the Debtors or the Post-Effective Date Debtors, the Wind-Down, the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Amended Plan Term Sheet, the Prepetition Facility, the Prepetition Debt Documents, the DIP Facility, the DIP Orders, the DIP Loan Documents, the Wind-Down, the Disclosure Statement Order, the Confirmation Order, the First Day Pleadings, any "second day" pleadings, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Amended Plan Term Sheet, the Disclosure Statement, this Plan, the Plan Supplement or any contract, instrument, release, or other agreement or document created or entered into in connection with the Amended Plan Term Sheet, the Disclosure Statement, the DIP Facility, the DIP Orders, the DIP Loan Documents, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the Investigation, the administration and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement in connection with the Wind-Down, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement, or (iii) any Cause of Action related to any act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to facilitating the Wind-Down and implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Debtors, the Post-Effective Date Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**D. Releases by Holders of Claims and Interests.**

Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Post-Effective Date Debtor, and Released Party from any and all Claims and Causes of Action, including any derivative claims asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, and their Estates (as applicable) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the purchase, sale, or rescission of any Security of the Debtors or the Post-Effective Date Debtors, the Wind-Down, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Amended Plan Term Sheet, the Prepetition Facility, the Prepetition Debt Documents, the DIP Facility, the DIP Orders, the DIP Loan Documents, the Wind-Down, the Disclosure Statement Order, the Confirmation Order, the First Day Pleadings, any "second day" pleadings, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Amended Plan Term Sheet, the Disclosure Statement, this Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Amended Plan Term Sheet, the Disclosure Statement, the DIP Facility, the DIP Orders, the DIP Loan

Documents, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the Investigation, the administration and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement, (iii) any indemnification rights and obligations under the Prepetition Debt Documents, or (iv) any Cause of Action related to any act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to facilitating the Wind-Down and implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that votes to accept this Plan or that is given the opportunity to opt out of the releases contained in this Plan and does not exercise such opportunity to opt out of the releases may not assert any claim, Claim, or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any such Entity may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in this Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in this Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in this Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

### E. Exculpation.

Except as otherwise expressly provided in this Plan or the Confirmation Order, to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated

Party is exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 Cases, the negotiation and pursuit of the Amended Plan Term Sheet, the Definitive Documents, the Plan Supplement, the participation in the DIP Facility and the Wind-Down, the pursuit of Confirmation, the pursuit of Consummation, the Investigation, the administration and implementation of this Plan, including the issuance of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, except for claims or Causes of Action in each case arising out of or related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.

**F. Injunction.**

Except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or settled, or are subject to exculpation under this Plan are permanently enjoined from and after the Effective Date from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Causes of Action, Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Causes of Action, Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities, in each case, on account of or in connection with or with respect to any such Causes of Action, Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) taking any other action on account of or in connection with or with respect to any such Causes of Action, Claims or Interests released or settled pursuant to this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan. Each Holder of an Allowed Claim, Allowed Interest, or Allowed Intercompany Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, Interest, or Intercompany Interest, as applicable, pursuant to this Plan, shall be deemed to have consented to the injunction provisions set forth in this Article IX.F.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action released, discharged, settled, or that is subject to exculpation pursuant to this Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party.

## G. Protections Against Discriminatory Treatment.

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Post-Effective Date Debtors, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against the Post-Effective Date Debtors, or another Entity with whom the Post-Effective Date Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## H. Document Retention.

On and after the Effective Date, the Post-Effective Date Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Effective Date Debtors.

## I. Reimbursement or Contribution.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the Holder of the relevant Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

### J. Preservation of Setoff Rights.

Notwithstanding anything in this Article IX to the contrary, any right of setoff or recoupment is preserved against the Debtors to the extent such right exists under applicable law and subject to the right of the Debtors, the Post-Effective Date Debtors, and the Wind-Down Trustee to contest any such right of setoff or recoupment; provided, however, that notwithstanding the foregoing or anything in this Plan to the contrary, the right of any Entity or Holder of a Claim or Interest to assert setoff or recoupment as a defense or affirmative defense to Claims or Causes of Action brought against it is expressly preserved to the extent permitted by applicable law and shall not be impaired, enjoined, precluded, or otherwise restricted by this Plan or the Confirmation Order.

### K. Subordination Rights.

The classification and manner of satisfying all Claims and Interests under this Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against other Holders of Claims or Interests with respect to any distribution made pursuant to this Plan. Except as provided in this Plan, all subordination rights that a Holder of a Claim may have with respect to any distribution to be made pursuant to this Plan shall be terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

### L. Integral Part of Plan.

Each of the provisions set forth in this Plan with respect to the settlement, release, cancellation, exculpation, and injunction of, for, or with respect to Claims and Causes of Action is an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision, and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A. Conditions Precedent to Confirmation.

Unless satisfied or waived pursuant to Article X.C of this Plan, the following are conditions precedent to Confirmation of this Plan:

1. the Bankruptcy Court shall have entered the Disclosure Statement Order, in form and substance consistent in all respects with the Amended Plan Term Sheet and otherwise acceptable to the Debtors and PIF, approving the Disclosure Statement as containing adequate information with respect to this Plan within the meaning of section 1125 of the Bankruptcy Code, and such order shall not have been vacated, amended, otherwise modified, or made subject to a stay pending appeal; and

2. the Confirmation Order to be entered by the Bankruptcy Court shall be in form and substance consistent in all respects with the Amended Plan Term Sheet and otherwise acceptable to the Debtors and PIF.

**B. Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C hereof:

1. the Bankruptcy Court shall have entered the Final DIP Order, which shall be in full force and effect and shall not have been stayed, modified, or terminated;

2. the Bankruptcy Court shall have entered the Disclosure Statement Order, which order shall be in full force and effect and shall not have been stayed, modified, or vacated on appeal;

3. the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors and PIF, which shall be a Final Order and shall (i) authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with this Plan; (ii) decree that the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) authorize the implementation of this Plan in accordance with its terms, including directing all necessary parties required to consummate the transactions set forth herein under applicable law; and (iv) provide that, pursuant to section 1146 of the Bankruptcy Code, the transfers contemplated by this Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

4. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents necessary to implement and effectuate this Plan, including the UK Recognition Completion and the Jersey Administration Completion, in form and substance acceptable to the Debtors and PIF;

5. the Wind-Down Trust Agreement shall have been executed and the Wind-Down Trust shall have been established in accordance with Article VII of this Plan, and the Wind-Down Trustee shall have been appointed;

6. the Wind-Down Budget shall have been Filed with the Plan Supplement and the Wind-Down Amount shall have been funded into the segregated account described in the definition thereof;

7. PIF shall have provided the PIF Cash Consideration;

8. all Allowed DIP Claims shall have been paid in full in Cash (or shall have received such other treatment as the DIP Lender may agree) in accordance with Article II.B of this Plan;

9. the Professional Fee Escrow Account shall have been established and funded in Cash in accordance with Article II.D of this Plan;

10. no breach of or failure to comply with the terms of the Definitive Documents, the Confirmation Order, or any other material Final Order of the Bankruptcy Court shall have occurred and be continuing; and

11. the final version of each of this Plan, the Definitive Documents, and all documents contained in the Plan Supplement, and any exhibits, schedules, amendments, modifications, or supplements thereto, shall have been executed or Filed, as applicable, consistent in all respects with the Amended Plan Term Sheet and otherwise in form and substance acceptable to PIF (except where the Amended Plan Term Sheet requires such documents to be reasonably acceptable to PIF, in which case such documents shall be reasonably acceptable to PIF), and shall comply with the applicable consent rights set forth in the Amended Plan Term Sheet and this Plan.

### C. Waiver of Conditions.

The conditions to Confirmation and to the Effective Date set forth in this Article X may be waived in whole or in part at any time by the Debtors only with the prior written consent (email shall suffice) of PIF, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

### D. Effect of Failure of Conditions.

If Consummation does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan or the Disclosure Statement shall: (i) constitute a waiver or release by the Debtors of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect; *provided* that all provisions of the Amended Plan Term Sheet that survive termination thereof shall remain in effect in accordance with the terms thereof.

### E. Substantial Consummation.

"Substantial Consummation" of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A. Modification and Amendments.

Except as otherwise specifically provided in this Plan, the Debtors reserve the right, with the prior written consent of PIF and subject to the consent rights set forth in the Amended Plan Term Sheet, to modify this Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in this Plan, and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights, with the prior written consent of PIF and subject to the consent rights set forth in the Amended Plan Term Sheet, to revoke or withdraw, or to alter, amend, or modify,

this Plan with respect to such Debtor, one or more times, after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Plan, or remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of this Plan.

**B. Effect of Confirmation on Modifications.**

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to this Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C. Revocation or Withdrawal of Plan.**

To the extent permitted by the Amended Plan Term Sheet, the Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any claims by the Debtors, Claims, Interests, or Intercompany Interests, or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (iii) nothing contained in this Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, and this Plan as legally permissible, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, Interest, or Intercompany Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests including equitable subordination or other subordination of any Claim, Interest, or Intercompany Interest, as applicable, pursuant to 11 U.S.C. § 510;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including the amount of Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Post-Effective Date Debtors' amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Assumed Executory Contracts and Unexpired Leases Schedule; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims, Interests, and Intercompany Interests (as applicable) are accomplished pursuant to the provisions of this Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with this Plan, the Confirmation Order, the Disclosure Statement, the Plan Supplement, or the Amended Plan Term Sheet;

8. enforce the terms and conditions of this Plan, the Confirmation Order, and the Definitive Documents and maintain the integrity of this Plan following Consummation;

9. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan, including any action that is intended or is reasonably likely to directly or indirectly prevent, impede, hinder, adversely affect, and/or delay the Wind-Down, or any actions or efforts of the Debtors or Post-Effective Date Debtors, as applicable, to consummate this Plan;

11. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, discharges, and exculpations contained in this Plan, including under Article IX hereof, whether arising prior to or after the Effective Date, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

13. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by Holders of Claims or Interests pursuant to Article VI.K hereof;

14. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15. determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan or the Disclosure Statement, including the Amended Plan Term Sheet;

16. enter an order or final decree concluding or closing the Chapter 11 Cases;

17. adjudicate any and all disputes arising from or relating to distributions under this Plan or any transactions contemplated herein;

18. consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19. determine requests for the payment of Claims or Interests, as applicable, entitled to priority pursuant to section 507 of the Bankruptcy Code;

20. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

21. hear and determine matters concerning U.S. state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article IX hereof;

23. enforce all orders previously entered by the Bankruptcy Court; and

24. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

### A. Immediate Binding Effect.

Subject to Article X hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests have, or are deemed to have,

accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any Holder of a Claim, Interest, or Intercompany Interest has voted on this Plan.

**B. Additional Documents.**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan and the Amended Plan Term Sheet. The Debtors or the Post-Effective Date Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**C. Payment of Statutory Fees.**

All monthly reports shall be Filed, and all fees due and payable pursuant to section 1930(a) of Title 28 of the United States Code shall be paid by each of the Debtors or the Post-Effective Date Debtors, as applicable, (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors) on the Effective Date, and following the Effective Date, the Post-Effective Date Debtors shall pay, or shall fund the Disbursing Agent to pay on their behalf, such fees as they are assessed and come due for each quarter (including any fraction thereof) until such Post-Effective Date Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first. The Post-Effective Date Debtors shall File quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each of the Debtors and the Post-Effective Date Debtors are jointly and severally liable for the payment of quarterly fees and shall remain obligated to pay such quarterly fees to the U.S. Trustee and to File quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claims and shall not be treated as providing any release under this Plan.

**D. Statutory Committee and Cessation of Fee and Expense Payment.**

On the Effective Date, the Committee and any other statutory committee appointed in these Chapter 11 Cases shall dissolve, and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The dissolution of the Committee does not limit the rights and obligations of the Committee and its Professionals to prepare and, if necessary, defend final fee applications for services rendered prior to the Effective Date.

**E. Reservation of Rights.**

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan

or the Disclosure Statement shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**F. Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of such Entity.

**G. Notices.**

Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor or a Post-Effective Date Debtor under this Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) electronic mail, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail, when transmitted, addressed as follows:

*If to the Debtors or the Post-Effective Date Debtors:* LIV Golf New Jersey LLC, 2093 Philadelphia Pike #2054, Claymont, DE 19703, Attn: David Orlofsky, Chief Restructuring Officer; with copies to: Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg, Matthew J. Williams, Robert E. Fitzgerald, and Tommy Scheffer (sgreenberg@gibsondunn.com; mjwilliams@gibsondunn.com; rfitzgerald@gibsondunn.com; tscheffer@gibsondunn.com); and Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, NJ 07601, Attn: Michael D. Sirota and Warren A. Usatine (msirota@coleschotz.com; wusatine@coleschotz.com).

*If to PIF or the DIP Lender:* White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Scott Greissman, Kim Havlin, and Gregory F. Pesce (sgreissman@whitecase.com; kim.havlin@whitecase.com; gregory.pesce@whitecase.com).

*If to the U.S. Trustee:* Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102.

After the Effective Date, the Post-Effective Date Debtors have authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Post-Effective Date Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H. Term of Injunctions or Stays.**

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until

the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**I. Entire Agreement.**

Except as otherwise indicated, this Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**J. Exhibits.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://omniagentsolutions.com/livgolf or the Bankruptcy Court's website at https://www.njb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of this Plan shall control.

**K. Nonseverability of Plan Provisions.**

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to this Plan and may not be deleted or modified without the Debtors' or Post-Effective Date Debtors' consent, as applicable; and (iii) nonseverable and mutually dependent.

**L. Votes Solicited in Good Faith.**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan and any previous plan, and, therefore, neither any of such parties nor individuals nor the Post-Effective Date Debtors will have any liability for the violation of any applicable law, rule, or

regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the securities offered and sold under this Plan or any previous plan.

**M. Closing of Chapter 11 Cases.**

The Post-Effective Date Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

**N. Waiver or Estoppel.**

Each Holder of a Claim, Interest, or Intercompany Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim, Interest, or Intercompany Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

[*Remainder of page intentionally left blank.*]

Dated: November 10, 2026

Respectfully submitted,

LIV Golf New Jersey LLC, on behalf of itself and each of its affiliated Debtors

By:

Name: David Orlofsky

Title: Chief Restructuring Officer

# EXHIBIT A

## Debtors

| No. | Debtor | Case No. |
|---|---|---|
| 1. | LIV Golf New Jersey LLC | 26-20189 |
| 2. | LIV Golf Incorporated | 26-20190 |
| 3. | LIV Golf Investments Ltd | 26-20193 |
| 4. | LIV Golf Holdings Ltd | 26-20194 |
| 5. | LIV Golf Ltd | 26-20197 |
| 6. | Wedge IP Management Co, LLC | 26-20199 |
| 7. | Wedge IP Management Co, Limited | 26-20200 |
| 8. | LIV Golf US Media, LLC | 26-20201 |
| 9. | LIV Golf Events (ISE) Ltd | 26-20202 |
| 10. | LIV Golf Events Ltd | 26-20203 |
| 11. | Fairway TM Blocker 1, LLC | 26-20204 |
| 12. | Fairway TM Blocker 2, LLC | 26-20205 |
| 13. | Fairway TM Blocker 3, LLC | 26-20206 |
| 14. | Fairway TM Blocker 4, LLC | 26-20207 |
| 15. | Fairway TM Blocker 5, LLC | 26-20209 |
| 16. | Fairway TM Blocker 6, LLC | 26-20210 |
| 17. | Fairway TM Blocker 7, LLC | 26-20212 |
| 18. | Fairway TM Blocker 8, LLC | 26-20213 |
| 19. | Fairway TM Blocker 9, LLC | 26-20214 |
| 20. | Fairway TM Blocker 10, LLC | 26-20215 |
| 21. | Fairway TM Blocker 11, LLC | 26-20216 |
| 22. | Fairway TM Blocker 12, LLC | 26-20217 |
| 23. | Fairway TM Blocker 13, LLC | 26-20218 |
| 24. | Fairway TM Co 1, LLC | 26-20219 |
| 25. | Fairway TM Co 2, LLC | 26-20220 |
| 26. | Fairway TM Co 3, LLC | 26-20221 |
| 27. | Fairway TM Co 4, LLC | 26-20222 |
| 28. | Fairway TM Co 5, LLC | 26-20223 |
| 29. | Fairway TM Co 6, LLC | 26-20224 |

| No. | Debtor | Case No. |
|---|---|---|
| 30. | Fairway TM Co 7, LLC | 26-20225 |
| 31. | Fairway TM Co 8 GP, LLC | 26-20226 |
| 32. | Fairway TM Co 8, LP | 26-20228 |
| 33. | Fairway TM Co 9, LLC | 26-20229 |
| 34. | Fairway TM Co 10, LLC | 26-20230 |
| 35. | Fairway TM Co 11, LLC | 26-20231 |
| 36. | Fairway TM Co 12 GP, LLC | 26-20233 |
| 37. | Fairway TM Co 12, LP | 26-20234 |
| 38. | Fairway TM Co 13, LLC | 26-20235 |
| 39. | Fairway TM Intermediate 1, LLC | 26-20237 |
| 40. | Fairway TM Intermediate 2, LLC | 26-20239 |
| 41. | Fairway TM Intermediate 3, LLC | 26-20240 |
| 42. | Fairway TM Intermediate 4, LLC | 26-20241 |
| 43. | Fairway TM Intermediate 5, LLC | 26-20242 |
| 44. | Fairway TM Intermediate 6, LLC | 26-20243 |
| 45. | Fairway TM Intermediate 7, LLC | 26-20245 |
| 46. | Fairway TM Intermediate 8, LLC | 26-20246 |
| 47. | Fairway TM Intermediate 9, LLC | 26-20247 |
| 48. | Fairway TM Intermediate 10, LLC | 26-20248 |
| 49. | Fairway TM Intermediate 11, LLC | 26-20249 |
| 50. | Fairway TM Intermediate 12, LLC | 26-20250 |
| 51. | Fairway TM Intermediate 13, LLC | 26-20251 |
| 52. | Wedge Event 1 Co | 26-20252 |
| 53. | Wedge Event 2 Co | 26-20253 |
| 54. | Wedge Event 3 Co | 26-20254 |
| 55. | Wedge Event 4 Co | 26-20255 |
| 56. | Wedge Event 7 Co | 26-20256 |
| 57. | Wedge WPB Inc. | 26-20257 |